SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. June Gorthy (a/k/a June Governale) (075009) (A-51-14)**

**Argued March 14, 2016 – Decided September 28, 2016**

**PATTERSON, J., writing for a unanimous Court.**

 In this appeal, the Court determines whether a trial court that has found a defendant competent to stand trial on criminal charges may compel her to assert an insanity defense, based on the evidence presented, where she has refused to do so.

Through persistent efforts over more than a decade, defendant June Gorthy attempted to commence a relationship with C.L., a mental health therapist residing in New Jersey whom she met only briefly in 1998 at a conference in California. After the conference, defendant repeatedly sent C.L. gifts, letters and phone messages, stating that she was in love with C.L. C.L. categorically rejected these overtures. Defendant then abandoned her home in Colorado and drove to New Jersey, where she repeatedly contacted C.L. Defendant was arrested when she was found sitting on the floor in front of C.L.'s office. Defendant was carrying a knife, and, after a consent search of her truck, the police found several guns, ammunition, including hollow point bullets, another knife and an axe. Upon her release from jail, she initially complied with instructions not to contact C.L., but then resumed doing so.

Defendant was arrested again, and charged with stalking and weapons offenses. Defendant was released on bail, and admitted to pre-trial intervention subject to conditions, including that she have no contact with C.L. Defendant complied until the spring of 2006, when she made seventy-four calls to C.L. over a three-week period. On November 15, 2006, defendant was charged under a superseding indictment with stalking and weapons offenses.

Defendant filed a pretrial motion challenging her competency to stand trial. After reviewing defendant's medical records and mental health evaluation, and questioning defendant, the trial court concluded that she was competent. Prior to trial, defendant's counsel served notice that defendant may assert an insanity defense, and submitted the report of a psychiatrist who opined that defendant was psychotic and delusional at the time of the alleged offenses. The psychiatrist further opined that, if defendant were to decide not to assert an insanity defense, she would be doing so knowingly, but not intelligently or voluntarily.

Defendant declined to raise the insanity defense, over the objection of her attorney. The trial court held a hearing at which the judge explained to defendant the consequences of declining to assert the defense, and of asserting it and being acquitted by reason of insanity. Defendant continued to refuse to assert an insanity defense. The trial court concluded that defendant's delusional condition had limited her ability to knowingly, intelligently and voluntarily determine whether to raise the defense, and then asserted the defense on her behalf on the stalking charge. Defendant was found not guilty by reason of insanity on that charge, and convicted on the weapons charges. The court entered an order of civil commitment on the stalking charge, and probation on the weapons convictions.

Defendant appealed her conviction, challenging the trial court's decision to assert the insanity defense on her behalf, and also raising several trial errors. The Appellate Division reversed the trial court's judgment on the insanity defense, and remanded for a bifurcated hearing on the insanity defense and the substantive defenses. This Court summarily remanded for reconsideration as to the insanity defense in light of the Court's disapproval of bifurcated proceedings where an insanity defense is raised. On the remand, another panel of the Appellate Division, in a published opinion, affirmed the trial court's judgment of acquittal by reason of insanity on the stalking charge. The panel rejected defendant's contention that because she was found competent to stand trial, the court should have permitted her to decline to raise the insanity defense, holding that a defendant's determination not to raise a defense is subject to a higher standard than that set by the competency statute. 437 N.J. Super. 339 (App. Div. 2014).

This Court granted defendant's petition for certification. 221 N.J. 220 (2015).

1

**HELD:** When a criminal defendant is found competent to stand trial under N.J.S.A. 2C:4-4, he or she has the autonomy to make strategic decisions at trial, with the advice of counsel, including whether to assert the insanity defense. Based on the trial court's finding that defendant was competent to stand trial, and the detailed explanation that it gave defendant of the potential benefits and risks of the insanity defense, the court should have permitted her to decide whether to assert the defense, rather than invoking it on her behalf. We reverse the trial court's judgment of acquittal by reason of insanity on the stalking charge, and remand for a new competency determination and, if appropriate, a new trial on this charge. We affirm defendant's conviction on the weapons charges.

1. An important factor in determining whether defendant is competent to stand trial under N.J.S.A. 2C:4-4(b) is whether defendant has the capacity to assist in his or her own defense, which turns on whether defendant's mental condition precludes meaningful interaction with his or her attorney regarding the pending charges and the trial. Where, as here, a court declares a defendant competent to stand trial, the defendant is deemed capable of understanding the basic elements of the proceeding, interacting with counsel to provide information, and making decisions about his or her defense. (pp. 17-20)

2. The insanity defense allows the court to determine whether one with mental illness should be held criminally responsible for his or her conduct under the standard stated in N.J.S.A. 2C:4-1. It is an affirmative defense that defendant must specifically invoke. If the court finds that defendant lacks the ability to distinguish between right and wrong, he or she is thereby excused from criminal culpability. If a defendant is acquitted by reason of insanity, the available options for defendant's disposition are set forth in N.J.S.A. 2C:4-8(b)(3). (pp. 20-21)

3. A defendant found competent to stand trial has the right to decline the insanity defense. Prior cases have set forth the procedure that a trial court should follow in that event. In State v. Handy, 215 N.J. 334 (2013), we rejected the bifurcated proceeding that the court prescribed in State v. Khan, 175 N.J. Super. 72, 81-82 (App. Div. 1980), when a defendant seeks to assert both a substantive defense and the insanity defense, and held that a unitary hearing should occur on all defenses. Accordingly, where the court is advised that the defendant does not plan to assert the insanity defense notwithstanding evidence that could support the defense, the court should undertake a detailed colloquy at the conclusion of the State's case to ensure that defendant understands the ramifications of his or her decision. The court should: explain the nature and purpose of the defense; describe generally the evidence relevant to that defense, including expert opinion that could be used to support or counter the defense; inform the defendant of his or her sentencing exposure in the event of a conviction; describe civil commitment and the other potential dispositions prescribed by N.J.S.A. 2C:4-8(b); and confirm the defendant's understanding of these matters. (pp. 21-25)

4. In this case, after finding defendant competent to stand trial and based on the defense psychiatrist's report, the trial court properly conducted a colloquy with defendant regarding her refusal to assert the insanity defense. The court thereby ensured that defendant had the information that she needed to make an informed decision. The trial court erred when it declined to respect defendant's autonomous decision not to assert the insanity defense, and interposed its own judgment to invoke the defense. To the extent that prior case law suggests otherwise, the Court declines to follow it. This error warrants a new trial on the stalking charge. The Court rejects defendant's other claims of trial error, and affirms the judgment of the Appellate Division upholding the weapons possession convictions. (pp. 25-32)

5. On remand, the trial court should assess defendant's competency to stand trial under N.J.S.A. 2C:4-4, based on current information and mental health evaluations. The court should consider, among other issues, whether defendant's delusionary condition, if it persists, renders her unable to participate in an adequate presentation of her defense. If defendant is found competent to stand trial, and declines to invoke the insanity defense, the court should advise her, at the close of the State's case, of the defense and the consequences of her choice, and then respect the decision that defendant makes. (pp. 27-32)

The judgment of the Appellate Division is **AFFIRMED IN PART** and **REVERSED IN PART**, and the matter is **REMANDED** to the trial court for further proceedings consistent with the Court's opinion.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned), join in JUSTICE PATTERSON's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

JUNE GORTHY (a/k/a JUNE
GOVERNALE),

    Defendant-Appellant.


        Argued March 14, 2016 – Decided September 28, 2016

        On certification to the Superior Court,
        Appellate Division, whose opinion is
        reported at 437 N.J. Super. 339 (App. Div.
        2014).

        Michele A. Adubato, Designated Counsel,
        argued the cause for appellant (Joseph E.
        Krakora, Public Defender, attorney).

        Mary R. Juliano, Special Deputy Attorney
        General/Acting Assistant Prosecutor, argued
        the cause for respondent (Christopher J.
        Gramiccioni, Acting Monmouth County
        Prosecutor, attorney).

        Emily R. Anderson, Deputy Attorney General,
        argued the cause for amicus curiae Attorney
        General of New Jersey (Robert Lougy, Acting
        Attorney General, attorney).

    JUSTICE PATTERSON delivered the opinion of the Court.

    When a criminal defendant is found competent to stand trial

under N.J.S.A. 2C:4-4, he or she has the autonomy to make

strategic decisions at trial, with the advice of counsel.  Among

those decisions is the choice whether or not to assert the insanity defense, which absolves a defendant of criminal responsibility for his or her conduct, if at the time of such conduct the defendant "was laboring under such a defect of reason, from disease of the mind as not to know the nature and quality of the act he was doing, or if he did know it, that he did not know what he was doing was wrong." N.J.S.A. 2C:4-1.

This appeal requires the Court to determine whether a trial court that has found a defendant competent may compel that defendant to assert the insanity defense, notwithstanding the defendant's decision not to raise that defense. Defendant June Gorthy was charged with stalking and weapons offenses. The charges arose from defendant's persistent attempts, over more than a decade, to contact a New Jersey woman whom she had met only briefly and who categorically rejected defendant's advances. Abandoning her Colorado home, defendant drove to New Jersey and repeatedly contacted the woman despite police warnings to cease doing so. When defendant was arrested, several weapons and hollow point bullets were found in her possession.

At the request of defense counsel, the trial court considered defendant's competence to stand trial. Although mental health experts agreed that defendant's conduct stemmed from a delusional disorder that caused her to believe that she

2

and the victim of her alleged stalking had a consensual romantic relationship, defendant indicated that she understood basic components of the judicial process, and the trial court found her competent to stand trial. At trial, defendant decided to forego the insanity defense, over the objection of her attorney. However, the trial court concluded that by virtue of her delusion, defendant could not knowingly, intelligently, and voluntarily waive the insanity defense, and asserted that defense on her behalf. Defendant was acquitted of the stalking charge by reason of insanity, convicted of the two remaining charges, sentenced to probation, and civilly committed.

The Appellate Division reversed the trial court's judgment with respect to the insanity defense, rejected defendant's contention that the trial court had committed evidentiary errors, and remanded for a new trial. This Court summarily remanded the case for reconsideration as to the insanity defense, and, on remand, the Appellate Division affirmed the trial court's judgment of acquittal by reason of insanity on the stalking charge. State v. Gorthy, 437 N.J. Super. 339, 347-48 (App. Div. 2014). We granted defendant's petition for certification.

We hold that in light of the trial court's finding that defendant was competent to stand trial, and the court's detailed explanation of the potential benefits and risks of the insanity

3

defense in a colloquy with defendant, the trial court should have permitted defendant to decide whether or not to assert the defense. However unwise defendant's strategy may have been, it constituted a competent defendant's decision about the conduct of her defense. Accordingly, we reverse the trial court's judgment of acquittal by reason of insanity on the stalking charge. We remand for a new competency determination and, if appropriate, a new trial on that charge. Because defendant's delusion was unrelated to her conviction for the two weapons offenses, and the trial errors that she alleges did not deprive her of a fair trial, we affirm her conviction for those offenses.

I.

We summarize the facts based on the record of the pretrial proceedings, including the mental health evaluations submitted to the trial court and the trial record.

In 1998, defendant, then a resident of Colorado, met a New Jersey-based therapist, C.L., at an event described as an "intensive therapy" or "personal growth" workshop in California. The workshop was conducted by C.L. and another mental health professional. Following the workshop, defendant sent C.L. gifts, which C.L. rejected. After defendant attended another workshop conducted by C.L. in 1999, she began sending letters and leaving phone messages for C.L., stating that she was in

4

love with C.L. and wanted to be with her.  Despite C.L.'s prompt and definitive rejection of defendant's advances, and her unequivocal advice that defendant needed professional help, defendant repeatedly attempted to contact C.L. over the course of several years.

In 2002, defendant packed her belongings in a trailer and drove from Colorado to New Jersey.  On July 8, 2002, defendant left a voicemail for C.L.  The next day, C.L. found a note from defendant, written on a napkin, on her office door.  The note stated that defendant was in the municipality in which C.L. maintained her office, and that defendant wanted to see C.L.

C.L. contacted the police.  An officer found defendant sitting on the floor in front of C.L.'s office.  After defendant produced a knife that she was carrying and consented to the search of her truck, the officer found several guns, ammunition including hollow point bullets, another knife, and an axe. Defendant told the officer that the guns were registered in Colorado.  Defendant was arrested.  When she was released a week later, she was advised not to communicate with C.L.  Five months later, defendant resumed her attempts to contact C.L.

Defendant was arrested again.  She was charged with fourth-degree stalking, N.J.S.A. 2C:12-10(b), third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b), fourth-degree possession of a prohibited weapon (hollow point bullets),

5

N.J.S.A. 2C:39-3(f), and fourth-degree contempt, N.J.S.A. 2C:29-9(a). She was released on bail, and ordered not to contact C.L. Defendant was admitted into the pretrial intervention program (PTI), pursuant to N.J.S.A. 2C:43-12 and Rule 3:28, with two conditions: that she refrain from any contact with C.L., and that she participate in mental health treatment and counseling.

Defendant was compliant with her PTI conditions until the spring of 2006, when she made seventy-four calls to C.L. in a three-week period. Defendant was arrested after police received a report that she was harassing pedestrians in the municipality in which C.L. maintained an office. Officers reported that defendant misidentified herself, using C.L.'s last name and address.

Thereafter, defendant's PTI status was terminated by court order due to her violation of the imposed conditions. On November 15, 2006, a grand jury returned a superseding indictment for the same offenses as the original indictment other than fourth-degree contempt, with the time period of the stalking count expanded to include the most recent incidents.

Defendant filed a pretrial motion challenging her competency to stand trial under N.J.S.A. 2C:4-4. After reviewing medical records and mental health evaluations, the trial court questioned defendant about her mental health history and alleged offenses. Defendant insisted that C.L. had

initiated contact with her by appearing at locations in New Jersey where defendant was riding her bicycle, jogging, or driving, and stated her belief that she had been "welcome and warmly invited" to move to New Jersey.

Defendant's counsel referred the court to reports by mental health professionals diagnosing defendant with schizophrenia, paranoid type, delusional disorder, and other conditions. With defendant interposing an "objection" to her counsel's statements, the attorney represented to the trial court that defendant was incapable of assisting in her defense, and was therefore incompetent to stand trial under N.J.S.A. 2C:4-4(b)(2)(g). Relying on defendant's apparent comprehension of the trial process and the consequences of strategic decisions in her case, the State argued that, notwithstanding her delusion, defendant was competent to be tried.

In accordance with N.J.S.A. 2C:4-5, the trial court ordered mental health evaluations of defendant to determine whether she was competent, and appointed a psychiatrist, Amir Rizvi, M.D., and a psychologist, Nichole Waldron, Psy.D., to conduct those evaluations. Although the mental health experts did not precisely agree on defendant's diagnosis, both concluded that defendant suffered from a delusional disorder. Nonetheless, both experts opined that defendant was competent to stand trial.

After reviewing defendant's evaluations and questioning defendant in detail during a second hearing, the trial court concluded that defendant was competent to stand trial. The trial court found that defendant had "the mental capacity to appreciate [her] presence in relation to time, place and things[,]" as required by N.J.S.A. 2C:4-4(b)(1). The trial court determined that defendant grasped the fact that she was charged with a criminal offense in a court of justice, that she understood the functions of the judge, the prosecutor, and the jury, that she was aware that she had a lawyer who would defend her, that she appreciated her obligations if she testified and her right not to testify, and that she recognized the ramifications of a guilty plea. N.J.S.A. 2C:4-4(b)(2)(a) to (f). Without elaborating, the court referred to evidence demonstrating defendant's ability to participate in an adequate presentation of her defense. N.J.S.A. 2C:4-4(b)(2)(g). The trial court ordered that defendant follow the mental health professionals' recommendations regarding medication and other treatment.

Prior to trial, defendant's counsel served notice on the court and the State that defendant "may assert the defense of insanity pursuant to [N.J.S.A. 2C:4-1]," and submitted to the trial court the report of a defense psychiatrist, Kenneth J. Weiss, M.D. Dr. Weiss opined that, at the time of the alleged

8

offenses that gave rise to the stalking charge and defendant's PTI violation, defendant was "psychotic and delusional" and "did not have the residual ability to know that she would be placing the victim in fear of bodily injury or to know that she was doing wrong." Dr. Weiss explained that defendant's mental condition met the requirements of N.J.S.A. 2C:4-1, the New Jersey statute governing the insanity defense, but that by virtue of her delusion, if defendant were to decide not to assert the insanity defense, she would do so knowingly but not intelligently or voluntarily.

The trial court held a hearing pursuant to the Appellate Division's decision in State v. Khan, 175 N.J. Super. 72, 81-82 (App. Div. 1980), overruled by State v. Handy, 215 N.J. 334, 349 (2013), to assess the potential role of the insanity defense in defendant's trial. The court explained to defendant that if she declined to assert the insanity defense and were convicted at trial, she could be sentenced to a maximum of three to five years in prison, but that if she were found not guilty by reason of insanity, she "would not face incarceration in New Jersey State Prison." Citing N.J.S.A. 2C:4-8, the court explained that in the event of defendant's acquittal by reason of insanity, she could be released with or without supervision or conditions, or civilly committed, but that she "wouldn't go back to jail[.]"

9

Defendant objected to the assertion of the insanity defense. She stated that her attorney had told her that "with the insanity defense, there's hospital time though, which is still imprisonment." Defendant insisted to the court that she was not guilty of stalking, and that she had an ongoing relationship with the alleged victim. She repeated her contention that C.L. had invited her to New Jersey. She claimed that C.L.'s former colleague, with whom C.L. had conducted the workshop in 1998, had "sabotaged" her relationship with C.L., and suggested that the colleague, not C.L., had contacted police about defendant.

The trial court found that the factual defense articulated by defendant -- that she and C.L. had a consensual relationship -- was premised on a delusion. It concluded that by virtue of her delusional condition, which had limited her ability to form judgments about her case, defendant was unable to knowingly, intelligently, and voluntarily decide not to assert the insanity defense. The court then stated its intention to assert the insanity defense on defendant's behalf at trial with respect to the stalking charge.

Defendant was tried before a jury. C.L. testified about defendant's attempts to contact her, the steps that she took to try to protect herself from defendant, the fear that she experienced because of defendant's conduct, and the disruptive

10

impact of that conduct on her career and personal life.  Police officers described defendant's behavior during various incidents.

Defendant testified in her own defense.  She told the jury that C.L. had invited her to New Jersey, that C.L. had repeatedly called her, that a police officer had advised her to attempt to contact C.L., and that C.L.'s former colleague had sabotaged her relationship with C.L.  Dr. Weiss testified about defendant's mental condition, in support of the insanity defense to the stalking charge.

The jury found defendant not guilty by reason of insanity of the stalking charge, and guilty of the two weapons charges, possession of a prohibited weapon and unlawful possession of a weapon.

In the wake of defendant's acquittal by reason of insanity on the stalking charge, the trial court held a hearing in accordance with Rule 3:19-2, N.J.S.A. 2C:4-8, and State v. Krol, 68 N.J. 236, 257 (1975).  It found that if defendant were released without supervision or conditions, she would pose a danger to the community and to herself.  The court civilly committed defendant to the custody of the Commissioner of the Department of Human Services for a period not to exceed eighteen months.  Defendant was sentenced to non-custodial probation for

her conviction of the weapons charges, and ordered, as a condition of probation, that she refrain from contact with C.L.

Defendant appealed her conviction. Although defendant did not contest the trial court's competency determination, she disputed the trial court's decision to assert the insanity defense on her behalf. Defendant also raised several alleged trial errors: that the trial court erroneously admitted evidence regarding weapons that were found in a locked gun case in her trailer but were not specifically charged in the indictment, that the prosecutor had asked improper questions and made inappropriate comments, and that the court did not respond correctly to the jury's questions during deliberations. An Appellate Division panel affirmed defendant's convictions on the two weapons charges but remanded the stalking charge for a bifurcated trial on defendant's substantive defenses and insanity defense in accordance with another panel's decision in Handy, supra, 215 N.J. at 597-600.

We granted the State's petition for certification, and remanded the case to the Appellate Division for reconsideration in light of our decision in Handy, supra, 215 N.J. at 364. State v. Gorthy, 216 N.J. 2 (2013). In Handy, supra, we held that when a competent defendant asserts a substantive defense and the insanity defense, both defenses should be determined in a unitary proceeding. 215 N.J. at 349. We thereby disapproved

12

of a bifurcated proceeding that had been adopted by the Appellate Division in Khan, supra, 175 N.J. Super. at 84.

On remand, another Appellate Division panel issued a published opinion, finding that the trial court's procedure had conformed to Handy, and affirmed defendant's acquittal by reason of insanity. Gorthy, supra, 437 N.J. Super. at 347-48. Relying on Handy, the panel rejected defendant's contention that because she was deemed competent to stand trial, the trial court should have permitted her to decline to raise the insanity defense. Id. at 342-44. The appellate panel held that the requirement that a defendant knowingly, intelligently, and voluntarily decide not to raise a defense sets a higher standard than does the competency statute. Id. at 344. The panel found that defendant's statements to the trial court were unrelated "to any legal issue or consequence." Id. at 347.

We granted defendant's petition for certification. 221 N.J. 220 (2015). We also granted the Attorney General's motion for leave to participate as amicus curiae.

                                II.

Defendant argues that the trial court improperly considered the potential merits of her insanity defense in determining that she could not knowingly, intelligently, and voluntarily waive the defense. She contends that the only question is whether, at the time of trial, the defendant is capable of rationally

13

waiving the insanity defense. Defendant asserts that she expressed an intelligent reason for her decision to forego the insanity defense: her fear that she would be civilly committed if acquitted of stalking by reason of insanity, which she characterized in her colloquy with the trial court as "hospital time." Defendant also contends that she was deprived of a fair trial because of testimony about her possession of weapons other than those involved in the charges against her, comments by the prosecutor, and the trial court's erroneous response to questions posed by the jury during deliberations.

The State asserts that both findings by the trial court -- that defendant was competent to stand trial, and that she was incapable of a knowing, voluntary, and intelligent decision not to assert the insanity defense -- were supported by substantial credible evidence. The State argues that a trial court's decision to interpose the insanity defense over a competent defendant's objection implicates competing concerns: society's interest in withholding punishment when a defendant's mental illness renders him or her morally blameless, and respect for a defendant's autonomy in the adversarial process. It contends that had defendant been convicted of stalking after refusing to assert the insanity defense, the result would have been unjust. The State denies that the trial court committed errors in the

14

admission of evidence or in its response to the jury's questions.

The Attorney General as amicus curiae concurs with the State that the standard by which a court assesses a defendant's capacity to decide not to raise the insanity defense differs from the standard of competency, and characterizes the trial court's decision as a "knowing and voluntary" determination based on the defendant's testimony and expert opinion. The Attorney General urges the Court to permit trial judges to interpose the insanity defense if a criminal defendant is not able to knowingly, intelligently, and voluntarily decide not to raise that defense.

III.

A.

The primary question raised by defendant in this appeal is whether the trial court properly interposed the insanity defense on her behalf, notwithstanding its prior rejection of defendant's position that she was incompetent to stand trial. In that inquiry, we review the trial court's factual findings in accordance with a deferential standard, disturbing them "only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'" State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). Our construction of the relevant statutory provisions,

however, entails a de novo review of the trial court's determination. State v. Goodwin, 224 N.J. 102, 110 (2016) ("Accordingly, the Appellate Division's interpretative conclusions are owed no deference, and we review the statute with 'fresh eyes.'") (quoting Fair Share Hous. Ctr., Inc. v. N.J. State League of Municipalities, 207 N.J. 489, 493 n.1 (2011)); see also State v. Tate, 220 N.J. 393, 405 (2015).

In a ruling that is not challenged in this appeal, the trial court determined that defendant was competent to stand trial, pursuant to N.J.S.A. 2C:4-4. That statute provides that "[n]o person who lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as such incapacity endures." N.J.S.A. 2C:4-4(a). The court decides whether a competency hearing is required; there are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed." Drope v. Missouri, 420 U.S. 162, 180, 95 S. Ct. 896, 908, 43 L. Ed. 2d 103, 118 (1975); see also State v. Lambert, 275 N.J. Super. 125, 129 (App. Div. 1994) (holding "[t]he evidence necessary to establish the requisite bona fide doubt as to a defendant's competence is difficult to articulate"); State v. Cecil, 260 N.J. Super. 475, 480 (App. Div. 1992) (same), certif. denied, 133 N.J. 431 (1993).

In a competency proceeding, the State has the burden to prove by a preponderance of the evidence that the defendant's mental condition at the time of trial does not render him or her incompetent to stand trial. State v. McNeil, 405 N.J. Super. 39, 49 (App. Div.), certif. denied, 199 N.J. 130 (2009); State v. Purnell, 394 N.J. Super. 28, 47 (App. Div. 2007) (citing Lambert, supra, 275 N.J. Super. at 129). The court is assisted by evaluations by one or more mental health professionals, who report to the court regarding the defendant's condition and his or her ability to understand and participate in the legal process. N.J.S.A. 2C:4-5(a), (b).

The statute sets forth findings that the court must make in order to find the defendant mentally competent. N.J.S.A. 2C:4-4(b). The court determines the defendant's "capacity to appreciate his presence in relation to time, place and things[,]" and his or her understanding of several aspects of the court process. N.J.S.A. 2C:4-4(b)(1).

An important component of the inquiry is the question whether the defendant has the capacity to assist in his or her own defense. See N.J.S.A. 2C:4-4(a) (barring prosecution of person lacking capacity to "assist in his own defense"); N.J.S.A. 2C:4-4(b)(2)(g) (identifying "the ability to participate in an adequate presentation of his defense" as factor in competency determination). The State need not prove

17

that the defendant is capable of formulating legal strategy; as this Court has noted, "[t]o assist in his defense of course does not refer to legal questions involved but to such phases of a defense as a defendant usually assists in, such as accounts of the facts, names of witnesses, etc." Aponte v. State, 30 N.J. 441, 453 (1959) (internal quotation marks omitted) (quoting Lyles v. United States, 254 F.2d 725, 729 (D.C. Cir. 1957), cert. denied, 356 U.S. 961, 78 S. Ct. 997, 2 L. Ed. 2d 1067 (1958)); Khan, supra, 175 N.J. Super. at 79. Nor must the State prove that the defendant can communicate with his counsel using complex language. See State v. Coleman, 46 N.J. 16, 40 (1965) ("It is well recognized that an accused may have a mental disorder but may nevertheless understand his position and be able to assist fully in his own defense."), cert. denied, 383 U.S. 950, 86 S. Ct. 1210, 16 L. Ed. 2d 212 (1966); State v. Pugh, 117 N.J. Super. 26, 32 (App. Div. 1971) (finding defendant competent, as he could "understand when simpler words and sentence structure were used[,]" and no evidence suggested "defendant could not reasonably comprehend his position and consult with his lawyer"), certif. denied, 60 N.J. 22 (1972). The question of a defendant's ability to assist in his or her defense turns on whether his or her mental condition precludes meaningful interaction with his or her attorney with respect to the pending charges and the trial.

18

If the defendant is found unfit for trial, the proceedings against him or her are suspended, subject to exceptions identified in the statute, and the court decides whether the defendant will be civilly committed or released, with or without conditions. N.J.S.A. 2C:4-6(b).[1]

When, as here, a court declares a defendant competent to stand trial, the defendant is deemed capable of understanding the basic elements of the proceeding, interacting with counsel to provide information and obtain advice, and making decisions about his or her defense, at the time of trial. See N.J.S.A. 2C:4-4(b); State v. Harris, 181 N.J. 391, 457 (2004) (noting defendant's "soliloquy to the court . . . demonstrates that [he] knew his where-abouts, the nature of the proceedings and of the charges, and the role of the different actors"), cert. denied, 545 U.S. 1145, 125 S. Ct. 2973, 162 L. Ed. 2d 898 (2005); Coleman, supra, 46 N.J. at 41 (concluding defendant's condition did not render him incompetent because he "understood his

---

[1] The trial court determines whether "the defendant is so dangerous to himself or others" that civil commitment is warranted, or, in the alternative, "proceed[s] to determine whether placement in an out-patient setting or release is appropriate[.]" N.J.S.A. 2C:4-6(b). Should the defendant fail to regain competency within three months, the court holds a hearing to decide "whether the charges against [the defendant] shall be dismissed with prejudice or held in abeyance." N.J.S.A. 2C:4-6(c).

situation, was able to consult intelligently with counsel, and was able to proceed with the trial").

## B.

The defense at the heart of this case "exists . . . not to identify the mentally ill, but rather to determine who among the mentally ill should be held criminally responsible for their conduct."  State v. Singleton, 211 N.J. 157, 173 (2012) (citing State v. Sikora, 44 N.J. 453, 470 (1965)).  "As the 'standard for determining criminal responsibility, the insanity defense draws on principles of moral blameworthiness.'"  State v. Winder, 200 N.J. 231, 242 (2009) (quoting State v. Worlock, 117 N.J. 596, 602 (1990)).  Codifying the rule of M'Naghten's Case, 8 Eng. Rep. 719 (H.L. 1843), the Legislature prescribed the standard for criminal insanity in N.J.S.A. 2C:4-1:

> A person is not criminally responsible for conduct if at the time of such conduct he was laboring under such a defect of reason, from disease of the mind as not to know the nature and quality of the act he was doing, or if he did know it, that he did not know what he was doing was wrong.

The insanity defense is "an affirmative defense which must be proved by a preponderance of the evidence."  N.J.S.A. 2C:4-1. In order to rely on the insanity defense at trial, a defendant must provide the State with pretrial notice of his or her intention to assert the defense, in accordance with N.J.S.A. 2C:4-3 and Rule 3:12-1.  It is, accordingly, a defense that must

20

be affirmatively invoked by the defendant if it is to play a role at trial.

As this Court has observed, "one who meets the test for insanity, that is, one who lacks the ability to distinguish between right and wrong, is thereby excused from criminal culpability." Handy, supra, 215 N.J. at 357 (citing Worlock, supra, 117 N.J. at 601). Following acquittal by reason of insanity, a court may: (1) release the defendant without supervision, if it finds that such a release would be "without danger to the community or himself," N.J.S.A. 2C:4-8(b)(1); (2) release the defendant under supervision or conditions, N.J.S.A. 2C:4-8(b)(2); or (3) civilly commit the defendant if it finds "that the defendant cannot be released with or without supervision or conditions without posing a danger to the community or to himself," N.J.S.A. 2C:4-8(b)(3).

Our courts have previously considered whether a trial court should respect or overrule a competent defendant's decision to forego a viable insanity defense, when the defendant suffers from a delusionary condition at the time of trial. In Khan, supra, the defendant, charged with the murder of a tenant at his aunt's home, insisted that the victim had attacked him with a hammer and that he had shot the victim in self-defense. 175 N.J. Super. at 76. Mental health experts opined that the defendant's version of the shooting -- and his self-defense

21

justification -- were the product of a paranoid delusion.  Id. at 76-77.  Despite that expert evidence, the defendant refused to permit his counsel to raise the insanity defense on his behalf.  Id. at 76.  The three judges who considered the defendant's competency at different stages disagreed as to whether he was competent to stand trial.  Id. at 77-79.

An Appellate Division panel ordered a remand for a new competency hearing in accordance with N.J.S.A. 2C:4-4 and -6.  Id. at 77-80.  The panel held that a trial court is authorized to "raise an insanity defense sua sponte only if the defendant is not capable of making, and has not made, an intelligent and voluntary decision."  Id. at 81 (quoting Frendak v. United States, 408 A.2d 364, 379 (D.C. Ct. App. 1979)).  It also set forth a procedure to be followed on remand in the event that the defendant was held competent, yet persisted in his refusal to assert the insanity defense, and the trial court interposed that defense on his or her behalf.  Ibid.  The panel instructed trial courts to conduct a bifurcated proceeding in that situation, with the insanity defense imposed by the court tried first, and the defendant's substantive defense to be considered second, if the jury did not acquit him or her by reason of insanity.  Id. at 84.

In Handy, supra, we rejected the bifurcated proceeding prescribed by the Appellate Division in Khan.  215 N.J. at 349-

22

The appeal in <u>Handy</u> arose from the defendant's acquittal by reason of insanity of the murder of his uncle, in the first phase of a bifurcated trial. <u>Id.</u> at 340, 344. A mental health expert testified that, by virtue of a delusional disorder, the defendant believed that the victim was one of a large group of people who had beaten and sexually abused him in a hospital, and that, as a result of his mental condition, the defendant did not appreciate that his act was wrongful. <u>Id.</u> at 340-41, 344. We held that when a defendant seeks to assert both a substantive defense and the insanity defense, both defenses should be adjudicated in a unitary trial, not a bifurcated proceeding as envisioned by the Appellate Division panel in <u>Khan</u>. <u>Id.</u> at 349.

Although our primary focus in <u>Handy</u> was the appropriate procedure for adjudicating an insanity defense and a substantive defense, we briefly commented on the trial court's decision to "foist the insanity defense" on the defendant. <u>Id.</u> at 360. We acknowledged the "merit in [the] general conclusion" that a defendant has the right to decline the insanity defense. <u>Ibid.</u> (citing <u>Cecil</u>, <u>supra</u>, 260 <u>N.J. Super.</u> at 489-90). Noting that that the Code "does not distinguish between competence to stand trial and competence to make other kinds of decisions relating to one's defense," we prescribed "a thorough and searching inquiry of an otherwise competent defendant concerning his or her understanding of the nature of the right being waived and

23

the implications that flow from that choice[.]" Id. at 362

(citing State v. Crisafi, 128 N.J. 499, 509-10 (1992)).

Accordingly, in the event that the court is advised by

counsel that the defendant does not plan to assert the insanity

defense notwithstanding evidence that could support that

defense, it should undertake a detailed colloquy at the

conclusion of the State's case in order to ensure that defendant

understands the ramifications of his or her decision.[2] The court

should explain to the defendant the nature and purpose of the

defense. It should generally describe the evidence relevant to

that defense, including expert opinion that could be used to

support or counter that defense. The court should inform the

defendant of his or her sentencing exposure in the event of a

conviction. It should describe civil commitment and the other

potential dispositions that are prescribed by N.J.S.A. 2C:4-8(b)

in the event of an acquittal by reason of insanity. The court

should confirm the defendant's understanding of the insanity

---

[2] When, as in this case, defense counsel informs the court that
the defendant has rejected the advice of counsel to assert the
insanity defense, counsel's representation is a strong
indication that the court should conduct a colloquy with the
defendant about the defense. There may be circumstances in
which the court determines that a colloquy is appropriate,
despite the failure of defense counsel to raise the issue before
the court. That said, we rely on defense counsel to present
this issue.

defense as it may affect the outcome of the trial, defendant's risk of incarceration and the prospect of civil commitment.

Having found the defendant to be competent and explained the consequences of the defendant's decision, the trial court should respect the defendant's independent choice. A competent defendant is deemed capable of deciding whether or not to assert a defense. See N.J.S.A. 2C:4-4.[3] His or her decision may not align with counsel's considered advice. It may not represent sound trial strategy. It constitutes, however an exercise of the defendant's autonomy.

Accordingly, if the trial court has made a finding of competency, it should not interpose its own judgment for that of the defendant, but should respect the defendant's choice. To the extent that our case law suggests otherwise, we decline to follow it. See Handy, supra, 215 N.J. at 362; see also State v. Marut, 361 N.J. Super. 431, 444-47 (App. Div. 2003), certif. denied, 190 N.J. 256 (2007); Cecil, supra, 260 N.J. Super. at 488-90; Khan, supra, 175 N.J. Super. at 80-84.

C.

In the competency determination conducted in this case, the trial court found that defendant understood the trial process

---

[3] We note that a defendant's refusal to assert the insanity defense, without more, does not compel the conclusion that he or she is unable to "participate in an adequate presentation of his [or her] defense." See N.J.S.A. 2C:4-4(b)(2)(g).

and the fundamental choices that she would be called upon to make.  It concluded that defendant was capable of actively participating in her defense.  Thus, before its hearing on the insanity defense began, the court had already determined that defendant had the capacity to understand and participate in trial strategy, and to make decisions on her own behalf.

After finding defendant competent and receiving Dr. Weiss's report, the trial court properly conducted a colloquy with defendant regarding her refusal to assert the insanity defense.[4] In that colloquy, the trial court summarized Dr. Weiss's opinion to defendant, who disputed the expert's findings.  Defendant asserted that although her judgment had been "somewhat impaired" by financial concerns and alleged threats by C.L.'s colleague when she left Colorado for New Jersey, she was not "completely out of [her] faculties" at that time.  The court advised defendant that she might be incarcerated if convicted of the alleged offenses, but that she would not be incarcerated for the stalking offense if she were found not guilty of that charge by reason of insanity.  The court explained in detail the options

---

[4] The trial court did not conduct a bifurcated proceeding as directed by the Appellate Division panel in Khan, supra, 175 N.J. Super. at 84, in which the insanity defense would be adjudicated first and the substantive defense reached only if the factfinder rejected that defense.  The trial court tried the case as a unitary proceeding, which was consistent with this Court's subsequent decision in Handy, supra, 215 N.J. at 360.

26

that would be available to it under state law, including civil commitment and an order releasing defendant with or without supervision and conditions, in the event of an acquittal by reason of insanity. In short, the trial court ensured that defendant had the information that she needed to make a decision whether to assert or forego the insanity defense.

The trial court's thorough explanation was reflected by defendant's responses to the court's comments. Although she did not express herself in sophisticated language or legal terms, defendant conveyed to the court two objections to the insanity defense: first, she did not believe that she was legally insane at the time of her offense; and second, she wanted to avoid civil commitment, a prospect that she equated to incarceration. Defendant clearly understood – and rejected - her counsel's professional advice and the trial court's cautionary comments. Although defendant's decision not to assert the insanity defense may have been imprudent, it was nonetheless an informed exercise of her free will.

Accordingly, the trial court erred when it declined to respect defendant's autonomy in the decision whether to assert the insanity defense. That error warrants a new trial on the stalking charge. On remand, the trial court should assess defendant's competency in accordance with N.J.S.A. 2C:4-4, based on current information and mental health evaluations. The court

27

should consider, among other issues, the question whether defendant's delusionary condition, if it persists, renders her unable to participate in an adequate presentation of her defense. N.J.S.A. 2C:4-4(a), (b)(2)(g). If defendant is found competent to stand trial, and declines to invoke the insanity defense despite the availability of evidence to support that defense, the court should advise defendant about the defense and the consequences of her choice at the close of the State's case.

IV.

Defendant contends that the trial court committed other errors that deprived her of a fair trial and warrant the reversal of her convictions for weapons offenses.

First, defendant contends that the trial court abused its discretion when it admitted evidence that at the time of her arrest, she possessed certain weapons that were not the basis for either of her weapons charges. At trial, defendant objected to the evidence on the ground that it violated N.J.R.E. 403, which authorizes the exclusion of relevant evidence "if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence." After conducting a hearing pursuant to N.J.R.E. 104, the trial court determined that the evidence was relevant to the stalking charge, because the number and type of

28

weapons in defendant's possession could have affected the extent to which a reasonable person would be put in fear of bodily injury or death. The court, however, permitted only the testimony of an officer regarding the weapons, and barred the admission of the actual weapons and photographs depicting them. The Appellate Division affirmed that ruling.

We review the trial court's evidentiary rulings for abuse of discretion. State v. T.J.M., 220 N.J. 220, 233-34 (2015); State v. Buda, 195 N.J. 278, 294 (2008). We concur with the Appellate Division's determination that the trial court properly exercised its discretion. The disputed evidence bore a direct nexus to defendant's stalking charge, and accordingly was intrinsic to one of defendant's alleged offenses. See State v. Rose, 206 N.J. 141, 177-78 (2011) (holding evidence intrinsic to charged crime need only satisfy N.J.R.E. 403 and other relevancy rules); State v. Brockington, 439 N.J. Super. 311, 325 (App. Div. 2015) ("Since the [intrinsic] evidence is properly subject to an analysis under N.J.R.E. 403 and meets the criteria for admissibility under that rule, it is unnecessary to consider its admissibility under N.J.R.E. 404(b)."). The evidence at issue therefore satisfied the relevancy and admissibility standards of N.J.R.E. 401 and 402, and its probative value was not substantially outweighed by its prejudicial effect for purposes of N.J.R.E. 403. The evidence was properly admitted.

Defendant next argues that she was denied a fair trial on her weapons offenses due to a single instance of prosecutorial misconduct:  the prosecutor's comment, in summation, that the gun found by police officers with defendant is "not a toy," and that it "gives fear, it brings about death, it can kill, it can maim, it can destroy families."

"[I]t is well-established that prosecuting attorneys, within reasonable limitations, are afforded considerable leeway in making opening statements and summations."  State v. Wakefield, 190 N.J. 397, 443 (2007) (quoting State v. DiFrisco, 137 N.J. 434, 474 (1994)), cert. denied, 552 U.S. 1146, 128 S. Ct. 1074, 169 L. Ed. 2d 817 (2008).  "Prosecutorial misconduct is a basis for reversal of a criminal conviction if the conduct was so egregious that it deprived the defendant of the right to a fair trial."  State v. Josephs, 174 N.J. 44, 124 (2002). Generally, however, a "fleeting and isolated" remark is not grounds for reversal.  State v. Watson, 224 N.J. Super. 354, 362 (App. Div.), certif. denied, 111 N.J. 620, cert. denied, 488 U.S. 983, 109 S. Ct. 535, 102 L. Ed. 2d 566 (1988).  When, as here, the defendant does not object to the prosecutor's statement, that statement does not warrant reversal of the conviction unless it is "of such a nature as to have been clearly capable of producing an unjust result."  R. 2:10-2.

We agree with the Appellate Division that the prosecutor's comment was not so egregious as to require a new trial on her weapons offenses. This was a single remark about the impact of a gun on a potential victim, in a trial in which the reaction of a reasonable person to the defendant's conduct was directly relevant to her stalking charge. In light of the evidence presented regarding defendant's possession of the weapons, the prosecutor's comment was not clearly capable of producing an unjust result.

Finally, defendant contends that the trial court committed plain error when it responded to three questions posed by the jury, with no objection from defendant. The jury's first inquiry was "[w]hen did [defendant] enter the State of New Jersey and when was she searched?" The trial court restated the sparse information on that issue, advising the jury that C.L. found a message from defendant stating that defendant was "here" on July 8, 2002, and that defendant's vehicle was searched on July 10, 2002. Second, the jury asked, "[i]s there a grace period to register guns in New Jersey?" The trial court properly reread to the jury the relevant provision of the statute governing the offense of unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5(b). The jury also asked, "[d]oes knowingly and willingly clause apply to [defendant's weapons charges]?" The trial court read to the

jury the relevant statutes, N.J.S.A. 2C:39-3(f) and -5(b), and summarized the elements of each offense.  In each case, the trial court properly responded to the jury's inquiry.  See State v. Scher, 278 N.J. Super. 249, 271 (App. Div. 1994) (noting trial court properly repeated jury instructions in response to jury question about relevant legal principles), certif. denied, 140 N.J. 276 (1995).  The court did not commit error, much less plain error, in responding to the jury's questions.

V.

The judgment of the Appellate Division with respect to defendant's conviction for possession of a prohibited weapon and unlawful possession of a weapon is affirmed.  The judgment of the Appellate Division, affirming the trial court's judgment of acquittal by reason of insanity on the charge of stalking, is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.


CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-
VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned), join
in JUSTICE PATTERSON's opinion.

32