**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4060-24

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

D.S.,

    Defendant-Respondent.

_____

Argued January 21, 2026 – Decided February 27, 2026

Before Judges Gilson and Firko.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 24-04-0166.

Emily M. M. Pirro, Assistant Prosecutor, argued the cause for appellant (John P. McDonald, Somerset County Prosecutor, attorney; Emily M. M. Pirro, of counsel and on the brief).

Shannon M. Dolan, Assistant Deputy Public Defender, argued the cause for respondent (Jennifer N. Sellitti, Public Defender, attorney; Shannon M. Dolan, of counsel and on the brief).

PER CURIAM

On leave granted, the State appeals from an April 10, 2025 order, which found defendant D.S. not competent to proceed to trial at this time.[1] In accordance with the governing statute, the order also directed that defendant be confined and reevaluated after several months of treatment. The State also appeals from a July 25, 2025 order, which denied its motion for reconsideration. Having reviewed the record and law, we affirm both orders because the trial court made its competency factual findings based on substantial credible evidence, including two opinions of qualified medical experts, correctly applied the law, and did not abuse its discretion. We also note that defendant is confined, will be periodically reevaluated, and will not be released from confinement without further court order.

---

[1] Because we discuss confidential medical and mental health issues and diagnoses, we use initials for defendant. R. 1:38-3(a)(2). To protect the privacy rights of the victim and her family, we also use initials for the victim. See R. 1:38-3(c)(12).

A-4060-24

I.

The issues on this appeal arise out of the tragic and brutal murder of a woman. For purposes of this appeal, we accept the facts alleged by the State, which are based on the investigation of the murder.[2]

Late in the evening of January 30, 2024, the Somerville Police Department received a call concerning an unresponsive woman outside a home. When the police officers responded, they found a woman lying face up on the ground next to her car. The woman, later identified as M.R.F., had approximately forty stab wounds to various parts of her body. The victim's car door was open, and her personal belongings were scattered around her body. The victim was later pronounced dead.

Law enforcement personnel conducted investigations, during which they interviewed various witnesses, obtained video footage, and executed a search warrant. Witnesses reported that in the weeks before the murder, the victim had told them she was being followed from a gym she regularly used. The victim described the person following her as a tall, skinny, white man, who wore glasses and a COVID-19 mask. The victim's mother reported that the victim

---

[2] The State did not include any of its investigative reports or materials. Therefore, we summarize the facts from the State's brief and the trial court's opinion.

A-4060-24

recognized the person following her as someone who had stalked her when she was younger. One of the victim's friends told law enforcement personnel that she believed the stalker may be defendant or another person.

Investigators obtained information that defendant had been at the gym at approximately the same time as the victim on January 30, 2024. Dash camera surveillance video footage depicted a man matching defendant's description in the area of the murder at approximately the time of the stabbing. The man was wearing a black gaiter, which is an article of clothing that is normally used to protect against mud splashes. A few days later, an individual looked into defendant's car and saw a black gaiter, duct tape, and a white trash bag.

On February 4, 2024, the police observed defendant standing by his car in a parking lot. Defendant's car trunk was open, and he was taking off a pair of plastic gloves. The police believed defendant had been washing his car. After he left they inspected the area and found a puddle that had a strong odor of bleach.

That same day, law enforcement personnel executed a search warrant at defendant's apartment. The search revealed a large quantity of bleach containers, a strong odor of bleach, blood residue in the entrance way and

bathroom, and a "manifesto." The manifesto detailed defendant's plans to kill M.R.F. Defendant was arrested the next day, on February 5, 2024.

A grand jury indicted defendant for five crimes related to M.R.F.'s death: (1) first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2) and N.J.S.A. 2C:11-3(b)(4)(c); (2) third-degree hindering apprehension or prosecution, N.J.S.A. 2C:29-3(b)(1); (3) third-degree possession of a weapon for unlawful purpose, N.J.S.A. 2C:39-4(d); (4) fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d); and (5) fourth-degree stalking, N.J.S.A. 2C:12-10(b).

Following defendant's arrest, defense counsel raised concerns with the court about defendant's competency. Accordingly, the court directed defendant to undergo a psychological evaluation to determine if he was competent to stand trial in accordance with N.J.S.A. 2C:4-4.

Dr. Ashley Strathern, a psychiatrist employed at the Ann Klein Forensic Center, evaluated defendant in May and June 2024. The evaluation included reviewing various records and interviewing defendant twice. Dr. Strathern then issued a report dated July 15, 2024. She noted that defendant had been diagnosed with autistic disorder and adjustment disorder with mixed anxiety and depression. Based on her review, Dr. Strathern agreed with defendant's autistic disorder diagnosis. The doctor also diagnosed defendant with schizophrenia

5

because he exhibited illogical and delusional thoughts and paranoia. Ultimately, Dr. Strathern concluded that defendant was incompetent to stand trial because his delusions and his illogical and paranoid thoughts would impair his ability to rationally appreciate the charges against him and his ability to work with his attorneys.

The State then retained its own psychiatric expert, Dr. Howard Gilman. Dr. Gilman conducted his evaluation of defendant in October and November 2024, and produced a report dated November 8, 2024. Like Dr. Strathern, Dr. Gilman reviewed various records, including Dr. Strathern's report. Dr. Gilman agreed that defendant suffered from schizophrenia and autistic spectrum disorder. Dr. Gilman, however, disagreed with Dr. Strathern on defendant's ability to participate in an adequate presentation of his defense. Instead, Dr. Gilman concluded that defendant's paranoia and delusions would not keep him from participating adequately in the presentation of his defense and opined defendant was competent to stand trial.

Defense counsel retained a third expert, Dr. Joel Nunez, who has a doctorate in psychology. Dr. Nunez reviewed various records, including the reports prepared by Dr. Gilman and Dr. Strathern. Like the other doctors, Dr. Nunez agreed that defendant suffered from schizophrenia and autistic spectrum

6

disorder. Like Dr. Strathern, Dr. Nunez opined that defendant's paranoia and delusional thought processes would impede his ability to assist in his own defense. Accordingly, Dr. Nunez agreed with the opinion of Dr. Strathern that defendant was incompetent to stand trial at that time.

On April 3, 2025, the trial court conducted a competency hearing. At that hearing, all three experts testified and their reports were admitted into evidence. The court also heard arguments by counsel.

On April 10, 2025, the trial court issued an order finding defendant incompetent to proceed to trial at that time. The court then directed defendant to be committed under the custody of the Commissioner of the Department of Health, that he receive treatment, and he be reevaluated within three months to determine if he was competent and fit to stand trial. The court supported its order with a twenty-page written opinion, which made detailed findings of facts and conclusions of law.

In its written opinion, the trial court noted all the experts agreed that defendant was oriented as to time, place, and things. The court also pointed out that all the experts agreed defendant was aware of his constitutional rights and the nature of the criminal proceedings against him. The court then focused on where the experts disagreed, which was on defendant's ability to participate in

7

an adequate presentation of his defense. See N.J.S.A. 2C:4-4(b)(2)(g). The court pointed out that two of the experts found defendant was not competent to stand trial at this time because of his inability to adequately participate in his defense, but Dr. Gilman had a different view.

The court then evaluated the three experts' testimony. The court noted that Dr. Gilman had been retained by the State, Dr. Nunez had been retained by defendant's counsel, and Dr. Strathern was a "neutral voice" because she was a court-appointed expert and was the first to conduct her evaluation. The court found Dr. Strathern's testimony and report to be "well-reasoned and credible." The court found that the combined opinions of Dr. Strathern and Dr. Nunez were not outweighed by Dr. Gilman's differing opinion. Thus, the court found defendant was not competent to proceed to trial at that time.

In making its finding, the court noted that the State bore the burden of proving that defendant was competent to proceed and had not carried that burden. The court also reasoned that defendant's paranoia and delusions "prevented him from having meaningful interactions with counsel" because he could not "accurately provid[e] information," obtain advice from his attorneys, and those inabilities would impede his participation in his defense.

A-4060-24

The State moved for reconsideration. After further briefing and additional oral arguments, the trial court denied that motion in an order entered on July 25, 2025. The trial court again supported its decision with a written opinion.

The State then moved for leave to appeal, which we granted. In January 2026, the State informed us that defendant had been transferred to the Ann Klein Forensic Center for further evaluation. At oral argument, counsel informed us that a further competency evaluation report had not been conducted because defendant was refusing to participate in treatment.

## II.

On appeal, the State contends that the trial court erred in finding defendant was not competent and not granting its motion for reconsideration. In that regard, the State argues the trial court misapplied the law and failed to consider certain facts. The State also asserts that the trial court erred in its analysis of the experts' opinions.

The Legislature, consistent with a defendant's constitutional rights, has declared: "No person who lacks capacity to understand the proceedings against him [or her] or to assist in his [or her] own defense shall be tried, convicted or sentenced for the commission of an offense so long as such incapacity endures." N.J.S.A. 2C:4-4(a). The statute then sets forth findings a court must make in

9

determining if a defendant is mentally competent.  In that regard, the statute states:

> b.    A person shall be considered mentally competent to stand trial on criminal charges if the proofs shall establish:
>
> (1)    That the defendant has the mental capacity to appreciate his presence in relation to time, place and things; and
>
> (2)    That his elementary mental processes are such that he comprehends:
>
> (a)    That he is in a court of justice charged with a criminal offense;
>
> (b)    That there is a judge on the bench;
>
> (c)    That there is a prosecutor present who will try to convict him of a criminal charge;
>
> (d)    That he has a lawyer who will undertake to defend him against that charge;
>
> (e)    That he will be expected to tell to the best of his mental ability the facts surrounding him at the time and place where the alleged violation was committed if he chooses to testify and understands the right not to testify;
>
> (f)    That there is or may be a jury present to pass upon evidence adduced as to guilt or innocence of such charge or, that if he should choose to enter into plea negotiations or to plead guilty, that he comprehend the consequences of a guilty plea and that he be able to knowingly, intelligently, and voluntarily waive those

10

rights which are waived upon such entry of a guilty plea; and

(g)   That he has the ability to participate in an adequate presentation of his defense.

[N.J.S.A. 2C:4-4(b).]

The New Jersey Supreme Court has explained:  "An important component of the inquiry is the question of whether the defendant has the capacity to assist in his or her own defense."  State v. Gorthy, 226 N.J. 516, 531 (2016).  The Court has also pointed out:  "The question of a defendant's ability to assist in his or her defense turns on whether his or her mental condition precludes meaningful interaction with his or her attorney with respect to the pending charges and the trial."  Id. at 531-32.

Where, as here, the court conducts a competency hearing, the State has the burden to prove by a preponderance of evidence that defendant's mental condition "does not render him or her incompetent to stand trial."  Id. at 530.  The State need not prove the defendant "is capable of formulating legal strategy" or is able to "communicate with his counsel using complex language."  Id. at 531.  Instead, the focus turns on the extent the defendant's mental condition "precludes meaningful interaction with his or her attorney."  Id. at 532.

11

Consistent with N.J.S.A. 2C:4-4, the trial court made detailed findings concerning defendant's mental competency. The court carefully evaluated the testimony and reports of the three experts. In doing so, the court found that the three experts all agreed defendant had mental disorders, which included schizophrenia and autistic disorder. The court also found the three experts all agreed that defendant's elementary mental processes could comprehend the factors listed in subsections (a) through (f) of N.J.S.A. 2C:4-4(b)(2). The court determined that the experts diverged on defendant's ability under subsection (g): "That he has the ability to participate in an adequate presentation of his defense." N.J.S.A. 2C:4-4(b)(2)(g).

In analyzing defendant's ability to participate in his defense, the court found that all the experts had noted defendant had delusions. The court then found that during his evaluation with Dr. Strathern, defendant had "directly contradicted his claims of non-involvement on many occasions by implying that this might be a self-defense case." The court ultimately found that "defendant's ability to provide information and obtain advice from his defense counsel is significantly impaired." In that regard, the court found: "The evidence suggests that defendant would experience the same paranoid delusions in conversations with counsel, significantly impairing his ability to provide them with important

A-4060-24

information in the case. In turn, it is likely that his attorneys cannot prepare an informed strategy for the case and advise him accordingly." Relying on the testimony and opinions of Dr. Strathern and Dr. Nunez, the court ultimately found that defendant was unfit and incompetent to proceed to trial at this time.

A. The State's Arguments.

The State first argues that the trial court misapplied the law by incorrectly analyzing case law, and in particular the cases of Gorthy and State v. Snell, 136 N.J. Super. 506 (App. Div. 1975). The trial court's careful and thoughtful written opinions rebut the State's contentions.

The trial court cited to and properly analyzed Gorthy and Snell. In Gorthy, the Court addressed the issue of "whether a trial court that has found the defendant competent may compel that defendant to assert the insanity defense, notwithstanding the defendant's decision not to raise that defense." 226 N.J. at 521. The Court held that the trial court cannot overrule defendant's decision and must respect the defendant's autonomy not to assert an insanity defense to a charge of stalking. Id. at 530, 536.

So, Gorthy did not address whether a defendant was or was not competent. Nevertheless, in discussing defendant's right to make autonomous decisions, the Court did discuss how trial courts should assess a defendant's competency under

13

N.J.S.A. 2C:4-4.  See Gorthy, 226 N.J. at 530-532.  Contrary to the contentions of the State, the trial court properly analyzed the general principles set forth in Gorthy and recognized that a key part of the competency assessment is whether defendant can "meaningful[ly] interact with his or her attorney with respect to the pending charges and the trial."  Id. at 532.

In Snell, we addressed whether a physician was incompetent because he practiced medicine in a "bizarre" manner.  136 N.J. Super. at 508.  We reversed the trial court's finding of incompetency because the judge concluded defendant could not adequately participate in his own defense based on how his practices would be perceived by defense counsel.  Ibid.  We noted the facts supported the trial judge's determination that Snell understood his position regarding the criminal charges and determined the trial judge drew an incorrect legal conclusion from those facts; that is, defendant could not adequately participate in his own defense due to his counsel's inability to understand him.  Ibid.

The State argues that Gorthy and Snell prohibit an "auditor-perception focus," which looks at how other people will perceive a defendant's choices.  In this matter, however, the trial court did not violate any rule established in Gorthy or Snell.  To the contrary, Gorthy and Snell instruct that a competency determination is fact specific.  See Gorthy, 226 N.J. at 530-31; Snell, 136 N.J.

14

A-4060-24

Super. at 508. The trial court here carefully analyzed the specific facts related to defendant's mental health and delusions. It then found that defendant was incompetent at this time because he could not adequately assist in his own defense and in communicating with his attorneys. We discern no error of law in the trial court's careful legal analyses.

Next, the State contends that the trial court failed to consider and properly analyze certain facts. Those facts include: (1) defendant's acts in attempting to cover up his actions by carefully cleaning his car with bleach; (2) defendant's response when he was initially approached by law enforcement personnel and he asked: "Am I free to go?"; and (3) defendant's manifesto, which set out "'step-by-step' instructions for carrying out the murder." The State asserts that those facts demonstrate defendant's understanding of his legal rights and his ability to defend the case against him.

The trial court, however, did not ignore those facts. Instead, the trial court accepted the consistent testimony of the experts that defendant had an understanding about the charges against him and the legal process that would be involved in his prosecution and trial. Where the trial court diverged from the State's position was on the issue of whether defendant could meaningfully interact with his attorneys concerning the charges and trial. That focus is what

15

the law requires.  See N.J.S.A. 2C:4-4; Gorthy, 226 N.J. at 531-32.  In short, what the State is really complaining about is that the trial court analyzed all the relevant factors but came to a different decision.  The State's disagreements with the findings the trial court made on substantial credible evidence is not a basis on which we can reverse the trial court's decision.

Finally, the State alleges that the trial court erred in analyzing the three expert opinions because it gave undue weight to the opinion of Dr. Strathern, as a "neutral" expert.  In other words, the State argues that the trial court did not properly consider the opinion of Dr. Gilman and placed too much emphasis on the opinion of Dr. Strathern.  The trial court's analysis rebuts this argument.  The trial court properly considered all three expert opinions.  After evaluating all the proper factors, the trial court relied on the combined opinions of Dr. Strathern and Dr. Nunez, both of whom found that defendant did not have the ability to meaningfully interact with his attorneys.  So, the trial court did not ignore Dr. Gilman's contrary opinion; rather, the trial court appropriately weighed all the opinions and then made an independent fact finding.

In summary, none of the State's arguments are supported by the record and the law.  Instead, the trial court's factual findings are supported by substantial credible evidence, and it properly analyzed and applied the law.

A-4060-24

### III.

Having determined defendant was incompetent at this time, the trial court also appropriately directed that defendant should be confined and reevaluated. In that regard, the New Jersey Supreme Court has explained: "If the defendant is found unfit for trial, the proceedings against him or her are suspended, subject to expectations identified in the statute, and the court decides whether the defendant will be civilly committed or released, with or without conditions." Gorthy, 226 N.J. at 532 (citing N.J.S.A. 2C:4-6(b)).

Here, the trial court civilly committed defendant to the custody of the Department of Health. The court also directed that defendant be reevaluated within three months to see if he has become competent to stand trial. That reevaluation process has been held up because defendant is not cooperating in his treatment. The important point, however, is that defendant is confined and will continue to be confined until further order of the trial court. Accordingly, we remand this matter so the trial court can continue to monitor and periodically assess defendant's competency.

Affirmed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

_M.C. Harley_

Clerk of the Appellate Division

A-4060-24