**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1341-18T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JUNE GORTHY a/k/a
JUNE M. GOVERNALE,
JUNE GORTHY GOVERNALE,

    Defendant-Appellant.

_____

Argued November 12, 2020 – Decided February 3, 2021

Before Judges Alvarez and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 15-04-0571.

Candace Caruthers, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Candace Caruthers, of counsel and on the briefs).

Mary R. Juliano, Assistant Prosecutor, argued the cause for respondent (Christopher J. Gramiccioni, Monmouth

County Prosecutor, attorney; Mary R. Juliano, of counsel and on the brief).

PER CURIAM

Tried to a jury, defendant June Gorthy was convicted of fourth-degree stalking, N.J.S.A. 2C:12-10. On September 28, 2018, the trial judge sentenced defendant to 1758 days credit for time served, and entered a permanent order restraining her from contact with the victim C.L. See N.J.S.A. 2C:12-10.1. She appeals the conviction; we affirm.

The indictment included a course of stalking from July 1, 2002, through May 31, 2006, which had been tried earlier. Defendant's prior conviction of not guilty by reason of insanity was vacated by the Supreme Court, and a new trial was ordered. State v. Gorthy, 226 N.J. 516 (2016). Defendant's five-year term of probation on a related charge, third-degree possession of a handgun, N.J.S.A. 2C:39-5(b), not reversed on appeal, included a no-contact provision that expired September 2014. On December 2, 2014, defendant phoned the victim. The indictments were consolidated and thus included conduct dating back to 2002, up to and including the 2014 phone call.

A detailed description of the stalking history can be found in the Supreme Court opinion as well as our own. See Gorthy, 226 N.J. 516; State v. Gorthy,

2

A-1341-18T2

437 N.J. Super. 339 (App. Div. 2014); State v. Gorthy, No. A-2678-01 (App. Div. 2012).

Defendant met C.L. in a 1998 "personal growth" conference at the Esalen Institute in California. The event rules prohibited participants from after-hours contact with presenters and stressed that presenters were not providing individual counseling services. After that first seminar, defendant sent C.L. fruit baskets. Defendant attended the annual seminar in 1999. During that conference, defendant engaged in inappropriate conduct, which continued after. She was banned from future participation.

Defendant relocated from Colorado to New Jersey in 2002, arriving unannounced at the victim's office, and eventually being arrested while outside her door. Police located weapons in defendant's van, including the firearm she was convicted of possessing, as a result of which she was placed on probation.

Between 1998 and when defendant was placed on probation in 2009, the stalking continued unabated, including seventy-four phone calls from April 15 to May 9, 2006, and defendant's filing of a complaint with New Jersey's Board of Marriage and Family Therapists regarding C.L. The complaint was ultimately dismissed because, among other reasons, C.L. was never defendant's therapist.

C.L. reported the 2014 phone call, and an arrest warrant issued for defendant. Defendant explained to the officer who arrested her that she only made the call because she was training as a mental health counselor and wanted C.L. to become her mentor. When defendant's apartment was emptied by the landlord, representatives contacted police and turned over a bag of items found in the apartment. This included several knives, binoculars, duct tape, a dog leash, a sleeping bag, pliers, lighter fluid, two pairs of latex gloves, and a surgical kit. Detective Jacob Kleinknecht testified on cross-examination and redirect that the items could potentially be used as kidnapping tools.

During the trial, C.L. and various police officers testified. Defendant also testified, insisting that in 1998, she and C.L. formed a close relationship, and that in 1999, it continued as she and C.L. exchanged phone calls and correspondence. Defendant denied that she violated the rules of the Esalen seminar, stating that between 1999 and 2002 she and C.L. "had a consensual relationship" with phone calls and letters. Additionally, she denied that C.L. ever wrote asking her not to contact her again.

Defendant claimed that in 2002, she reached out to C.L. only because she "felt that, [she] was being legally harmed with some misunderstandings and mis -- misinformation stated in the police reports." She explained that when she

4

contacted C.L. in 2006 it was because she was going through a difficult time in her life and felt that C.L. was a person who "cared." Defendant denied that she had the internet capacity on her phone to send certain inculpatory messages she had written to C.L. She said that in 2012 she and C.L. passed each other in Trenton, coming within a couple of feet and exchanging a friendly glance, and that as a result, she called her in 2014.

Defendant explained each item found in her apartment as having been possessed for an innocent reason. She asserted that C.L. called her as much as she called C.L. between 1999 and 2002, and wrote to her—adding that she lost C.L.'s letters because of her moves, and that since she had a different phone at the time, she was unable to obtain the records to prove that C.L. called her. Defendant also explained that she relocated from Colorado because when she and C.L. spoke in 1998, C.L. said she did not want a long-distance relationship and knew she was moving to New Jersey. Defendant also claimed that the officer who arrested her in 2008 told her that although she was prohibited from contacting C.L., that if she encountered her on the street, she "should try to talk to her."

In other words, defendant readily acknowledged the conduct with which she was charged while testifying. However, she insisted that C.L. and she had

5

been involved in a relationship, that C.L. had contacted her, and that therefore the conduct was not stalking.

On appeal, defendant raises the following points:

POINT I

THE TRIAL COURT ERRED BY ADMITTING HIGHLY PREJUDICIAL AND IRRELEVANT EVIDENCE OF OTHER BAD ACTS.

A.  The Pre-Indictment Evidence Was Irrelevant to Prove a Course of Conduct Between 2002 and 2014 and Was Solely Admitted for Propensity.

   i.  The Pre-Indictment Evidence is Not Intrinsic Because It Neither Facilitated nor Directly Proved Stalking Between 2002 and 2014.

   ii.  The Pre-Indictment Evidence is Inadmissible Under N.J.R.E. 404[(b)] Because It Does Not Satisfy the Cofield Factors.

   iii.  The Failure to Give a 404(b) Charge That Clearly Explained the Permissible Use of The Prior-Bad-Act Evidence Necessitates Reversal.

B.  References to the 2002 and 2009 No-Contact Orders Were Unnecessary, Inappropriate, and Prejudiced [Defendant's] Right to a Fair Trial.

C.  The State's Many References to the Prior Arrest and Search Warrants for [Defendant's] from Judges Were Improper and Require Reversal.

6

D. The Evidence of [Defendant's] Prior Arrests Was Inadmissible.

E. The State's Use of Additional Odd Behaviors That Occurred Within the Indictment Period Was Irrelevant Because It Was Wholly Unrelated to the Course of Conduct.

F. The Court's Failure to Give any Limiting Instruction about the 2002 and 2014 Items Denied [Defendant's] a Fair Trial.

G. Conclusion.

POINT II

REVERSAL IS REQUIRED BECAUSE THE STATE PRESENTED IMPROPER AND HIGHLY PREJUDICIAL LAY OPINION TESTIMONY.

POINT III

THE OMISSION OF ANY TIME-LIMITATION RENDERS THE ANTI-STALKING STATUTE UNCONSTITUTIONALLY VAGUE BECAUSE IT FAILS TO PROVIDE ADEQUATE NOTICE OF PROHIBITED CONDUCT AND LIKEWISE FAILS TO PROVIDE THE STATE WITH GUIDELINES FOR ENFORCEMENT, LEADING TO ARBITRARY RESULTS.

I.

Defendant's first point is that the testimony of events dating back to 1998 up until 2002 should have been excluded, as only the 2002 to 2014 conduct was included in the indictment. The admission of the material was objected to at

7

trial, thus, we review it for harmless error. We will disregard any error "unless it is of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2.

N.J.R.E. 404(b) bars the admission of "other bad acts" evidence in order to prevent the jury from convicting because of conclusions it may draw regarding a defendant's predisposition. State v. Skinner, 218 N.J. 496, 514 (2014). The rule reads in pertinent part:

> evidence of other crimes, wrongs, or acts is not admissible to prove a person's disposition in order to show that on a particular occasion the person acted in conformity with such disposition.
>
> [N.J.R.E. 404(b).]

However, prior bad acts evidence may be introduced if intrinsic to the charged offense. State v. Rose, 206 N.J. 141, 180 (2011). "[E]vidence is intrinsic if it 'directly proves' the charged offense" or if it facilitated the charged offense. Id. at 180 (quoting United States v. Green, 617 F.3d 233, 248-49 (3d Cir.2010)). Under this approach, background evidence is admissible for a non-propensity reason such as "allowing the jury to hear the full story of the crime[.]" Id. at 181 (quoting Green, 617 F.3d at 249). See also State v. Brockington, 439 N.J. Super. 311, 327 (App. Div. 2015).

Whether evidence is intrinsic in nature is decided by applying the rules of relevancy, most importantly N.J.R.E. 403. Rose, 206 N.J. at 177-78. Thus, if the "evidence bore a direct nexus to defendant's stalking charge," it is intrinsic to the offense. Gorthy, 226 N.J. at 539 (holding the weapons in defendant's possession were intrinsic to the stalking charge "because the number and type of weapons in defendant's possession could have affected the extent to which a reasonable person would be put in fear of bodily injury or death").

If the bad act evidence is not intrinsic, it is only admissible after an N.J.R.E. 404(b)(2) analysis. N.J.R.E. 404(b)(2) states such evidence "may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident when such matters are relevant to a material issue in dispute." It is subject to the State v. Cofield test, and to gain admission, the State must demonstrate that:

> 1. The evidence of the other crime [is] relevant to a material issue;
>
> 2. It [is] similar in kind and reasonably close in time to the offense charged;
>
> 3. The evidence of the other crime [is] clear and convincing; and

4. The probative value of the evidence must not be outweighed by its apparent prejudice.

[State v. Cofield, 127 N.J. 328, 338 (1992).]

Where other crimes evidence is admitted, "[a] carefully crafted limiting instruction must explain to the jury the limited purpose for which the other-crime evidence is being offered." State v. Hernandez, 170 N.J. 106, 131 (2001).

"A person is guilty of stalking, a crime of the fourth degree, if [they] purposefully or knowingly engage[] in a course of conduct directed at a specific person that would cause a reasonable person to fear for [their] safety or the safety of a third person or suffer other emotional distress." N.J.S.A. 2C:12-10(b). The State must prove beyond a reasonable doubt:

> 1) defendant engaged in speech or conduct that was directed at or toward a person, 2) that speech or conduct occurred on at least two occasions, 3) defendant purposely engaged in speech or a course of conduct that is capable of causing a reasonable person to fear for herself or her immediate family bodily injury or death.
>
> [State v. Gandhi, 201 N.J. 161, 186 (2010) (quoting H.E.S. v. J.C.S., 175 N.J. 309, 329 (2003)).]

The trial judge in this case admitted the pre-indictment conduct because he found it was intrinsic to the stalking charge. To establish stalking, the State had to prove that the 2002 to 2014 conduct would cause reasonable fear in the victim. See id. at 186. Without this evidence—the pre-2002 circumstances—

the jury would not have understood C.L.'s concern.  The information placed the conduct in context, constituting proofs that would aid the jury in assessing defendant's credibility.

The pre-2002 events presented the jury with the complete picture. Essentially, it "allow[s] the jury to hear the full story of the crime."  Rose, 206 N.J. at 181.  Thus N.J.R.E. 404(b) was not violated by the judge's admission of the evidence.  The evidence was intrinsic to the course of stalking over many years.

Additionally, the judge gave a limiting instruction.  Rose required  "[a] suitable limiting instruction [that] 'explain[s] precisely the permitted and prohibited purposes of the evidence, with sufficient reference to the factual context of the case to enable the jury to comprehend and appreciate the fine distinction to which it is required to adhere.'"  Rose, 206 N.J. at 161 (quoting State v. Barden, 195 N.J. 375, 390 (2008)) (third alteration in original).  The judge explicitly instructed the jury that the pre-2002 conduct was being presented only as "background information."

Defendant also complains that several "odd" behaviors were wrongly admitted, as they did not establish actual direct communication with the victim. This argument lacks merit because by engaging in conduct that would attract the

attention of the police, defendant "contacted" the victim indirectly. During one of those incidents, defendant used C.L.'s last name to identify herself to police when they were called. Defendant gave the victim's home address as her own. The unusual messages defendant composed found on her cell phone were sent to the victim, although because defendant had no internet, C.L. did not receive them. That means that defendant acted intentionally, making the behavior more than just "odd"—it was intended to result in communication with C.L.

Defendant also argues that the State was not required to prove she intentionally elicited fear from the victim, thus the evidence of her arrest should have been inadmissible. Since the thrust of defendant's testimony was that over the years she and C.L. engaged in a mutual relationship in which others—specifically, the police—interfered, evidence of the arrest was relevant to establish that defendant's overtures were unwelcome. It cast doubt on the veracity of defendant's testimony.

Nor was it error for the prosecutor to have introduced the no-contact orders. It is undisputed black-letter law that a jury should not be informed of the existence of a restraining order unless it is necessary to prove an underlying crime. State v. Chenique-Puey, 145 N.J. 334, 343 (1996). In this case, however, the no-contact orders were not restraining orders under the Prevention of

Domestic Violence Act, N.J.S.A. 2C:25-17 to -35. This was a no-contact order, which C.L. requested. A domestic violence restraining order implies a judicial determination that a person barred from contact has engaged in some wrongful conduct. A no-contact order does not carry that stigma.

Furthermore, this evidence was also intrinsic to the offense. That no-contact orders had been obtained, and that defendant ignored their import, went directly to the heart of the issue of whether the single phone call in 2014 itself constituted stalking. Since it was intrinsic to the crime, it was admissible.

Defendant contends the prosecutor's mention of the search and arrest warrants was unduly prejudicial. The admission, however, was appropriate in light of defendant's defense theory that it was the police, and not C.L., who wished to keep defendant and the victim apart. In fact, in closing, defense counsel argued that the police "made wild assumptions in this case," and had "mischaracterized [defendant] as a violent, dangerous person." The knowledge that warrants had been issued, and the brief mention during closing, were necessary to refute defendant's testimony.

Defendant asserts the admission of the items seized during the search of defendant's trailer and apartment should have been accompanied by a limiting instruction. The items did not support an element the State was required to

13

prove. Clearly, defendant was not being charged with kidnapping or assault or possession of any of the items that were seized. Certainly, the nature of the items seized in 2002 contributed to C.L.'s unease over defendant's years-long relentless delusion. They were therefore relevant. Even if the admission of the items found in defendant's apartment in 2014 was error, the error was harmless. After all, defendant did not deny her conduct. She merely insisted, in the face of overwhelming proof to the contrary, that her overtures were welcome.

The admission of the evidence, and even the absence of limiting instructions in some instances, was not error. No cumulative effect requires reversal because no error occurred.

II.

Defendant next argues that Kleinknecht's testimony was impermissible highly prejudicial lay opinion testimony. We do not agree. The objected-to material is found in Kleinknecht's affidavit describing the items found in defendant's apartment as potential kidnapping tools. He was first asked about this information, however, on cross-examination. Defendant on appeal now contends that Kleinknecht's testimony on re-direct was impermissibly prejudicial, however, the fact defendant opened the door makes it unobjectionable.

Essentially, defense counsel asked Kleinknecht if he had said in an affidavit that the items found in the apartment could be used in a kidnapping. The prosecutor then, item-by-item, reviewed the reason for his opinion. Under the circumstances, the testimony was admissible and proper.

The defense attacked Kleinknecht's credibility by suggesting he was fabricating the severity of defendant's conduct. The State introduced the testimony to rehabilitate the witness's credibility, not to prove that defendant meant to kidnap the victim. See N.J.R.E. 607(a). He was not offering an opinion, but even if he was, it fell within the boundary of his expertise and experience. This point does not warrant further discussion in a written opinion. R. 2:11-3(e)(2).

### III.

Defendant also contends that the omission of a time limitation makes the anti-stalking statute unconstitutionally vague. This argument was not made to the trial judge. We disagree.

Defendant argues that a person of ordinary intelligence could not reasonably find a contact several years removed from other contacts constitutes a course of continuing, prohibited contact under the statute. A course of conduct is one of the statutorily enumerated elements—behavior engaged in

"repeatedly." N.J.S.A. 2C:12-10(a)(1). "'Repeatedly' means on two or more occasions." N.J.S.A. 2C:12-10(a)(2). Pursuant to the statute, a single contact, even if made years later, as in this case, comes within the definition of stalking. A reasonable person would understand that even one phone call made after years of silence following years of unwanted contact would expose the person to liability under the statute. In any event, defendant was found guilty of one charge.

Defendant knew she was prohibited from contact with C.L. during the time that she was on probation. It was not until two months later, after the term of probation expired, that she called the victim. Defendant could have readily foreseen that her behavior violated the statute.

Any arguments raised by defendant not explicitly addressed in this opinion lacked sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1341-18T2