# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0425-19

IN THE MATTER OF THE
COMMITMENT OF C.M.

_____

Submitted October 7, 2020 – Decided November 9, 2021

Before Judges Fuentes and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 13-12-1187.

Joseph E. Krakora, Public Defender, attorney for appellant (Nora R. Locke, Deputy Public Defender, and Daniel F. O'Brien, Assistant Deputy Public Defender, on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Mark Niedziela, Assistant Prosecutor, of counsel and on the brief).

The decision of the court was delivered by

FUENTES, P.J.A.D.

In this appeal, we are asked to determine whether a civil declaration of incompetency made by the Law Division, Civil Part, pursuant to a verified complaint filed under <u>Rule</u> 4:86-1 to -12, vitiates or supersedes the Criminal

Part's role to continue to monitor a defendant acquitted of attempted murder by reason of insanity under N.J.S.A. 2C:4-1, as required by State v. Krol, 68 N.J. 236 (1975). The Criminal Part held the post-trial civil action did not affect its legal obligation to conduct Krol hearings to determine whether defendant poses a danger to the community, or to himself, and therefore commitment should continue. We agree and affirm.

On December 23, 2013, a Passaic County grand jury returned an indictment against defendant C.M.,[1] charging him with first degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3(a), two counts of third degree possession of a weapon (knife) for an unlawful purpose, N.J.S.A. 2C:39-4(d), fourth degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d), and second degree aggravated assault, N.J.S.A. 2C:12-1(b)(1).

Represented by counsel, defendant waived his constitutional right to trial by jury and agreed to a bench trial before Judge Miguel de la Carrera. Defendant asserted the affirmative defense of not guilty by reason of insanity. The trial began on April 16, 2015. Dr. Louis B. Shlesinger, a Diplomate in Forensic Psychology, testified that at the time defendant engaged in the conduct that

---

[1] We use initials to identify appellant to protect the confidentiality of these proceedings pursuant to Rule 1:38-3(f)(2) and N.J.S.A. 30:4-82.4.

A-0425-19

formed the basis for the offenses charged in the indictment, he satisfied "the criteria of the legal standard of insanity in accordance with the M'Naghten Rule." In a final judgment entered on September 28, 2015, Judge de la Carrera found defendant not guilty by reason of insanity on all of the charges in the indictment, based on the standard adopted by the Legislature in N.J.S.A. 2C:4-1,[2] which provides:

> A person is not criminally responsible for conduct if at the time of such conduct he was laboring under such a defect of reason, from disease of the mind as not to know the nature and quality of the act he was doing, or if he did know it, that he did not know what he was doing was wrong. Insanity is an affirmative defense which must be proved by a preponderance of the evidence.

Judge de la Carrera thereafter followed the procedures for disposition codified in Rule 3:19-2, and in an order entered on September 28, 2015, committed defendant to the custody and care of the Commissioner of the Department of Human Services (the Commissioner), "to be confined in an appropriate institution" where he would be treated for his psychiatric condition. The court ordered defendant "to be committed for a period of twenty (20) years,

---

[2] "N.J.S.A. 2C:4-1 codifie[d] the common law M'Naghten test for legal insanity, which was originally formulated in England in the 1840s." State v. Singleton, 211 N.J. 157, 174 (2012).

which is the maximum ordinary sentence for the crime of attempted murder," and merged the remaining offenses.

The order also provided "defendant may apply to this [c]ourt for his release pursuant to N.J.S.A. 2C:4-9" and directed the Commissioner to bring defendant to the court "for regular reviews of his condition pursuant to State v. Krol, 68 N.J. 236 (1975), the first of which shall be scheduled on January 22, 2016." To assist the court, a qualified psychiatrist or licensed psychologist shall examined C.M. "prior to each Krol review" to enable the court to determine whether: (1) C.M. could be released to the community without supervision, and without posing a danger to himself or others; (2) whether C.M. could be released to the community under supervision or conditions, without posing a danger to himself or others; or (3) whether C.M. cannot be released "with or without supervision" without being a danger to himself or others in the community, and therefore must be committed to a mental health facility.

The order further directed that any findings or recommendations made by mental health professionals concerning the suitability of C.M.'s release must be submitted to the court in writing. Defendant cannot be administratively discharged by the psychiatric institution selected by the Commissioner without

the court's authorization. The Commissioner placed defendant in Greystone Park Psychiatric Hospital (Greystone).

On July 25, 2017, the then-acting Chief Executive Officer (CEO) of Greystone filed a verified complaint in the Chancery Division, Probate Part, Morris County vicinage, seeking guardianship of C.M. and the appointment by the court of a guardian who can manage C.M.'s affairs. Dr. Anthony Gotay, a clinical psychiatrist who examined and treated C.M. at Greystone, submitted a certification in support of this civil action. Dr. Gotay stated C.M. suffers from Chronic Paranoid Schizophrenia, he has "very poor insight" and "very poor judgment," and has a history of violence, which included "attacking police officers with a knife, when his Schizophrenia was not properly treated."

According to Dr. Gotay, C.M. is not capable of managing his own financial affairs; he is not able to think rationally or communicate in a rational manner; he is noncompliant with medication; and is not capable of giving informed consent to medical treatment. Dr. Gotay opined that C.M.'s clinical prognosis is "extremely unlikely to improve." Dr. Ravi Baliga, Greystone's Acting Chief of Psychiatry, submitted a certification dated July 11, 2017, in-line with Dr. Gotay's psychiatric prognosis of C.M. According to Dr. Baliga, C.M. was incapable of attending the court hearing. C.M.'s mother, C.J., submitted a

certification expressing her wish to be appointed the legal guardian for her "alleged mentally incapacitated" adult son. Her authority to act in this capacity would be for the "strictly limited" purpose of "rendering assistance" to her son in making decisions. C.J. acknowledged her role and authority would not include assisting her son in matters involving financial obligations for his care and treatment.

On September 12, 2017, Judge Stuart A. Minkowitz, Assignment Judge of the Morris County vicinage, conducted a competency hearing on the petition filed to declare C.M. "an incapacitated person, unfit and unable to govern and manage his own affairs." In an order dated that same day, Judge Minkowitz appointed C.J. as the plenary guardian of her son's person and property.

On September 12, 2018, C.M filed a motion to terminate his Krol status on the grounds that he has been declared legally incapacitated by the civil court. The Passaic County Prosecutor's Office responded in opposition. The matter came for oral argument before Judge de la Carrera on April 18, 2019. Counsel for C.M. conceded C.M. was competent at the time he was tried on the charges reflected in the indictment and asserted the affirmative defense of not guilty by reason of insanity under N.J.S.A. 2C:4-1. Defense counsel argued, however, the question before Judge de la Carrera now was "what is the legal nature of his

6

competency, because one can be incompetent and still be dangerous and still be civilly committed. There are people who have guardians who are civilly committed, but it's outside of the <u>Krol</u> context and those individuals are looked after by their guardians."

Defense counsel argued that C.M. was no longer under the <u>Krol</u> standard of review; C.M. can be evaluated for dangerousness under his incompetency status and committed for treatment, if necessary, by his court-appointed guardian, his mother. This prompted the following colloquy:

> THE COURT: -- it means that that person would then be in many ways the ultimate determinant of what should happen with him, not the [c]riminal [c]ourt, which is the one that placed him in this status.
>
> DEFENSE COUNSEL: That's correct, but the [c]ivil [c]ourt would still have jurisdiction over him, according to [N.J.S.A.] 3B:12-36, the [c]ourt has the authority over an incompetent person with respect to all matters, and pursuant to [N.J.S.A.] 3B:12-49, the [c]ourt appoints a guardian to exercise these powers on behalf of the [c]ourt.
>
> The guardian must act in the best interests of the individual. The guardian is given tremendous power over the [ward] to act in the best interest, and specifically [N.J.S.A.] 3B:12-48 . . . or I'm sorry, [N.J.S.A. 3B:]12-57[(f)], determined place of abode and medical decisions, informed decisions which are usually in -- determined in a conditional release.

A-0425-19

The Assistant Prosecutor who appeared for the State in these proceedings opted not to participate in oral argument and rested on the brief.  Although Judge de la Carrera expressed concerns about the approach suggested by defense counsel, he reserved making a final decision.

On May 10, 2019, Judge de la Carrera denied C.M.'s motion to terminate his <u>Krol</u> status.  The judge explained his ruling in an oral decision delivered from the bench.  He also denied C.M.'s application for a stay pending appeal. Judge de la Carrera provided the following explanation in support of his ultimate ruling:

> No conflict of any kind was created [by] Judge Minkowitz's appointment of a guardian for . . . [d]efendant.  This [c]ourt fully agrees with the State's argument.
>
> The notion that . . . [d]efendant's having a more diminished capacity than he did when he was adjudicated [not guilty by reason of insanity] and that any further reviews of his status should be reviewed only in a civil commitment context without prosecutorial input and all the rest of what is involved in <u>Krol</u> review strikes this [c]ourt as utterly baseless as a matter of law.
>
> . . . .
>
> I am confident that Judge Minkowitz, a fellow [t]rial [j]udge, albeit an Assignment Judge, did not believe that he was vitiating . . . [d]efendant's <u>Krol</u> status in any way by appointing [C.M.'s] mother to be his guardian

so that she -- so that she could advocate for him on appropriate matters where . . . [d]efendant might not be able to argue for himself. . . .

[D]efendant need not maintain competence throughout his Krol status as [d]efendant argues. That he would receive potentially significantly less supervision because his condition worsened a few years after his placement in Krol status would be an absurd result.

It would entirely defeat the purpose of Krol, which is to assure the safety of . . . [d]efendant and the community by keeping him under appropriate committed supervision until and unless there is . . . credible evidence presented to the [c]ourt that . . . [d]efendant is no longer a danger to himself or the community. No such showing has been made. Defendant's motion[,] therefore, is denied.

Against this factual backdrop, C.M. appeals raising the following arguments:

POINT I

[C.M.] Lacks Sufficient Capacity To Remain on Krol Status and Because He Can Neither Comprehend [the] Proceeding or Maintain an Attorney Client Relationship and Accordingly His Status Should Be Terminated.

POINT II

The Standard of Review of the Lower Court's Denial of the Motion to Terminate Krol Status of C.M. is De Novo Because it is an Interpretation of Law and Therefore Not Entitled to Special Deference (Not Raised Below).

A-0425-19

We reject these arguments and affirm substantially for the reasons expressed by Judge de la Carrera. We add only the following brief comments. The Supreme Court recently reaffirmed:

> Following acquittal by reason of insanity, a court may: (1) release the defendant without supervision, if it finds that such a release would be "without danger to the community or himself," N.J.S.A. 2C:4-8(b)(1); (2) release the defendant under supervision or conditions, N.J.S.A. 2C:4-8(b)(2); or (3) civilly commit the defendant if it finds "that the defendant cannot be released with or without supervision or conditions without posing a danger to the community or to himself," N.J.S.A. 2C:4-8(b)(3).
>
> [State v. Gorthy, 226 N.J. 516, 533 (2016).]

A declaration of civil incompetency and the appointment of a guardian by a civil court to manage defendant's affairs does not address the statutory standards codified in N.J.S.A. 2C:4-8(b). A Criminal Part judge must conduct a Krol hearing governed by these statutory standards. Furthermore, in a Krol review hearing, the State has the burden to show there has been no material change in C.M.'s condition or potential dangerousness. Matter of Commitment of J.L.J., 196 N.J. Super. 34, 46-47 (App. Div. 1984).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0425-19