# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2332-23

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

Z.K.,[1]

    Defendant-Respondent.

_____

Submitted October 10, 2024 – Decided October 30, 2024

Before Judges Natali and Vinci.

On appeal from an order of the Superior Court of New Jersey, Law Division, Union County, Indictment No. 21-05-0277.

William A. Daniel, Union County Prosecutor, attorney for appellant (Michele C. Buckley, Assistant Prosecutor, of counsel and on the brief).

Jennifer N. Sellitti, Public Defender, attorney for respondent (Andy H. Murray, Assistant Deputy Public Defender, of counsel and on the brief).

---

[1] We use initials to protect the confidentiality of defendant's mental health diagnoses and evaluations. See R. 1:38-3(a)(2).

PER CURIAM

On leave granted, the State of New Jersey appeals from a February 26, 2024 order, entered after a hearing, finding defendant Z.K. not competent to stand trial. We affirm the February 24th order but remand for the court to make necessary factual findings and legal conclusions as to whether the charges against defendant should be held in abeyance or dismissed as required by N.J.S.A. 2C:4-6.

I.

Defendant was charged and indicted with second-degree aggravated arson, N.J.S.A. 2C:17-1(a)(1); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); two counts of third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(5)(a); third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3)(a); and fourth-degree criminal mischief, N.J.S.A. 2C:17-3(a)(1). Those charges stem from an incident where defendant struck and seriously injured a Linden police officer who was responding to a report of a fire at defendant's home.

Defendant fled the scene but was eventually confronted by additional officers close to his home. Despite being commanded to lay on the ground, defendant ignored the officers' commands and shouted, "'[s]hoot me, shoot, f[*****]g shoot me,' while pacing back and forth."

Officers were able to secure defendant and transported him to Trinitas Hospital via ambulance. "While in the ambulance, defendant stated that he [would] burn the hospital and kill everyone there." The record before us discloses that defendant was exhibiting abnormal behavior and experiencing schizoaffective disorder symptoms and delusions before the crimes that form the basis of this appeal.

Defendant remained at Trinitas Hospital for approximately two-and-a-half weeks before being transferred to Ann Klein Forensic Center where he was a patient from December 4, 2019, until April 1, 2020, at which time he was transferred to the Union County jail. He was briefly detained and released on conditions after a hearing. After he failed to comply with the release conditions, which included mental health treatment, the court issued a warrant for his arrest, detained him, and ultimately released him again under similar conditions.

At a status conference, defendant's counsel expressed concern regarding defendant's ability to assist in his defense in light of his mental state. The court accordingly ordered a competency evaluation, which was performed by Susie Chung, Ph.D., a state-licensed clinical psychologist.

After speaking with members of defendant's family, reviewing his psychiatric records, and interviewing defendant on two separate occasions, Dr.

Chung concluded defendant was competent to stand trial and detailed her findings and opinions in a written report. The court subsequently held a competency hearing in which Dr. Chung appeared as the sole witness.

At that hearing, Dr. Chung testified she had diagnosed defendant with schizoaffective disorder, bipolar type, as well as history of cannabis and alcohol use disorder. She stated during her first interview of defendant, he exhibited symptoms including: (1) muttering under his breath and (2) delusional beliefs and paranoia which required "a little . . . more redirection" for him to answer certain interview questions.

Dr. Chung found defendant "was generally coherent[,] . . . logical[,] and goal-directed in his thought process" but also "illogical in some of the statements that he made. . . . [B]ut overall, when it came to being able to focus on the questions, he was able to focus . . . ." In her written report, Dr. Chung further explained defendant "appeared to understand the information communicated to him [regarding the purpose of the evaluation] by repeating the information in his own words with minimal prompts . . . ."

During his second interview, defendant denied experiencing visual hallucinations recently, but admitted he still suffered from auditory hallucinations. Dr. Chung observed defendant muttering under his breath at

A-2332-23

times, albeit less frequently than the initial interview. Although she reported defendant continued to experience "a bit of paranoia," he stated "the symptoms [were not] bothering him as much as they [had] before."

Dr. Chung explained that individuals, like defendant, who experience symptoms for an extended period, can "reach a point where they learn skills to cope[,]" but those symptoms will not dissipate entirely. She clarified, however, the fact that defendant may continue to suffer from psychiatric symptoms "does not necessarily mean he [cannot] function day-to-day or that he is not competent . . . ."

Dr. Chung found defendant was: (1) oriented to place, person, and time; (2) aware he was charged with serious criminal offenses, specifically assault, arson, and resisting arrest; (3) understood his case was in court; (4) able to describe the role of the judge, prosecutor, and public defender; (5) aware of his public defender's name; (6) cognizant what it meant to testify and, if he chose to do so, he would be expected to tell the truth; and (7) understood the consequences of a guilty plea. Based on her interactions with defendant, Dr. Chung believed defendant had the ability to assist his counsel in his own defense.

A-2332-23

On cross-examination, Dr. Chung acknowledged like all individuals with mental illness, defendant had good and bad days as it related to his ability to cope with his symptomology. She conceded when not being spoken to directly, defendant would occasionally speak to himself and respond to internal stimuli.

Dr. Chung also admitted she was not aware defendant had the right to participate in the jury selection process and agreed that defendant's internal "stimuli" could interfere with his ability to concentrate during that process and other aspects of trial. She also agreed that despite being on the most effective medication for his symptoms, defendant continued to respond to internal stimuli during the competency hearing, a response that was likely to reoccur.

Dr. Chung conceded defendant's mental state did not present "an entirely clear-cut case when it comes to competency compared with other defendants" she had evaluated. She explained she does not typically conduct two evaluations but did so in defendant's case because she concluded the first interview was insufficient for her to reach a competency determination. Dr. Chung also consulted with two colleagues regarding defendant's case as part of "best practices" because defendant was still experiencing symptoms and his case was not "so clear-cut" as an individual who was "asymptomatic as a result of having been on medications." Recognizing the stresses associated with a trial, Dr.

6

Chung explained "[recommendations would] be important things to put in place . . . in preparation to help him cope with those difficulties of . . . sitting through a trial . . . ."

After considering Dr. Chung's testimony and the supplemental submissions of counsel, the court concluded defendant was not competent to stand trial and was not likely to become competent in the future. The court issued a conforming order on February 26, 2024, and explained its decision in a comprehensive written decision.

Despite finding Dr. Chung a credible witness, the court rejected her opinions in part because of her unfamiliarity with "various aspects of a trial," particularly defendant's right to participate in jury selection and explained that lack of "familiarity . . . likely impacted her determination that defendant is competent to stand trial."

In addition, the court found compelling Dr. Chung's admission that defendant has "good days and bad days," and noted he continued to "star[e] upwards and speak[] to himself" during the hearing; laughed to himself; smiled; shook his head up and down; and muttered to himself. The court stated it observed defendant over the course of four years and his behavior during the competency proceeding mirrored his conduct over that period where he would

7

respond to internal stimuli, even when he was compliant with his prescribed medication.

The court found defendant's behavior was consistent with Dr. Chung's testimony in which she acknowledged defendant could experience internal stimuli throughout his life, despite taking prescribed medication. Those symptoms, the court reasoned, could not be remedied by consultation breaks with his counsel, as the court was convinced they would continue to "distract him from paying attention to what is happening during his trial and will interfere with his ability to make critical decision[s]."

The court was satisfied defendant "would not be able to focus on the various phases of a trial even if re-directed at times by his attorney . . . [who would] not have many opportunities to consult one-on-one with defendant during a trial like Dr. Chung was able to do during her interviews of defendant." The court ultimately concluded:

> While the [c]ourt finds that, during his meetings with [Dr.] Chung, defendant was oriented to person, place, date, and to his current situation, understood the roles of the judge, prosecutor, defense counsel, and jury, comprehended the charges against him and that he has a right to plead guilty, to testify, and not testify, the [c]ourt does not find that defendant would have the ability to consult intelligently with his attorney. In other words, it is the [c]ourt's determination that

defendant does not have "the ability to participate in an adequate presentation of his defense."

[(quoting N.J.S.A. 2C:4-4(b)(2)(g)).]

## II.

Before us, the State contends reversal is warranted as the court's findings are "against the evidence," and its decision is inconsistent with N.J.S.A. 2C:4-4(b) and applicable case law. Specifically, the State argues the court erred in finding defendant not competent merely because he was observed responding to internal stimuli and, in doing so, mistakenly disregarded Dr. Chung's unrebutted report and opinions based on her "purported lack of familiarity" with the criminal justice system. It maintains defendant was competent to stand trial because he fully understood the charges against him and the proceedings and possessed "sufficient coping skills to manage the internal stimuli he experiences." After considering these contentions in the context of our deferential standard of review, we remain unpersuaded.

Our role when reviewing a trial judge's decision as to competence is "typically, and properly, highly deferential." State v. Moya, 329 N.J. Super. 499, 506 (App. Div. 2000); State v. M.J.K., 369 N.J. Super. 532, 548 (App. Div. 2004). Similarly, we have recognized it is the role of the judge, not the experts, to determine whether defendant is competent to stand trial. Moya, 329 N.J.

9

Super. at 506. We do not review the factual record to determine how we would decide the matter if we were "the court of first instance." State v. Johnson, 42 N.J. 146, 161 (1964). Rather, a trial court's determination of competency will be sustained if there is sufficient supporting evidence in the record. State v. Purnell, 394 N.J. Super. 28, 50 (App. Div. 2007).

Where there is a bona fide doubt as to a criminal defendant's competence to stand trial, a competency hearing must be held. Id. at 47. Once the issue is raised, the State bears the burden of establishing competence by a preponderance of the evidence. Ibid.; State v. Gorthy, 226 N.J. 516, 530 (2016). At a minimum, the State must show that the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him. Purnell, 394 N.J. Super. at 47 (citing Dusky v. United States, 362 U.S. 402, 402 (1960)).

The requirement that a defendant must be competent to stand trial is grounded in fundamental and basic due process considerations. Ibid.; M.J.K., 369 N.J. Super. at 547. That is so because if a defendant is tried while incompetent to stand trial, that defendant has been deprived of his due process right to a fair trial. State v. Cecil, 260 N.J. Super. 475, 480 (App. Div. 1992).

A-2332-23

Those principles are codified in our Criminal Code which provides "[n]o person who lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as such incapacity endures." N.J.S.A. 2C:4-4(a). The test for competency to stand trial in a criminal matter is detailed in subpart (b) and provides:

> [a] person shall be considered mentally competent to stand trial on criminal charges if the proofs shall establish:
>
> > (1) [t]hat the defendant has the mental capacity to appreciate [their] presence in relation to time, place and things; and
> >
> > (2) [t]hat [their] elementary mental processes are such that [they] comprehend[]:
> >
> > > (a) [t]hat [they are] in a court of justice charged with a criminal offense;
> > >
> > > (b) [t]hat there is a judge on the bench;
> > >
> > > (c) [t]hat there is a prosecutor present who will try to convict [them] of a criminal charge;
> > >
> > > (d) [t]hat [they have] a lawyer who will undertake to defend [them] against that charge;

11

(e) [t]hat [they] will be expected to tell to the best of [their] mental ability the facts surrounding [them] at the time and place where the alleged violation was committed if [they] choose[] to testify and understand[] the right not to testify;

(f) [t]hat there is or may be a jury present to pass upon evidence adduced as to guilt or innocence of such charge or, that if [they] should choose to enter into plea negotiations or to plead guilty, that [they] comprehend the consequences of a guilty plea and that [they] be able to knowingly, intelligently, and voluntarily waive those rights which are waived upon such entry of a guilty plea; and

(g) [t]hat [they have] the ability to participate in an adequate presentation of [their] defense.

[N.J.S.A. 2C:4-4(b).]

Further, our Supreme Court has recently noted:

An important component of the inquiry is the question whether the defendant has the capacity to assist in [their] own defense. See N.J.S.A. 2C:4-4(a) (barring

12

prosecution of person lacking capacity to "assist in [their] own defense"); N.J.S.A. 2C:4-4(b)(2)(g) (identifying "the ability to participate in an adequate presentation of [their] defense" as factor in competency determination) . . . . The question of a defendant's ability to assist in [their] defense turns on whether [their] mental condition precludes meaningful interaction with [their] attorney with respect to the pending charges and the trial.

[Gorthy, 226 N.J. at 531-32.]

Finally, when, as here, a court finds a defendant not competent to stand trial, there is a presumption that the charges against them "shall be held in abeyance." N.J.S.A. 2C:4-6(c).

> The presumption can be overcome only if the court determines, . . . that continuing the criminal prosecution under the particular circumstances of the case would constitute a constitutionally significant injury to the defendant attributable to undue delay in being brought to trial.
>
> In determining whether the charges shall be held in abeyance or dismissed, the court shall weigh the following factors: the defendant's prospects for regaining competency; the period of time during which the defendant has remained incompetent; the nature and extent of the defendant's institutionalization; the nature and gravity of the crimes charged; the effects of delay on the prosecution; the effects of delay on the defendant, including any likelihood of prejudice to the defendant in the trial arising out of the delay; and the public interest in prosecuting the charges.
>
> [Ibid.]

Having reviewed the record, we are satisfied the court conscientiously considered all the N.J.S.A. 2C:4-4(b) factors and determined, based upon all the evidence before it, defendant was not competent to stand trial. Given our highly deferential standard of review, we find no basis to disturb this determination and affirm substantially for the reasons expressed by the court in its comprehensive written decision. We add the following comments.

In rejecting Dr. Chung's opinions, the court acknowledged she found defendant satisfied the N.J.S.A. 2C:4-4(b) factors. The court concluded, however, based on other portions of Dr. Chung's testimony, as well as its own observations, including defendant's unabated response to internal stimuli, he did not possess "the ability . . . to focus on witness testimony and other aspects of a trial [which are] critical to one's exercise of [their] constitutional rights."

As the court explained, despite being oriented to the N.J.S.A. 2C:4-4(b) factors, defendant would likely be unable to "consult intelligently with his attorney." Further, the court found significant that Dr. Chung was unfamiliar with "various aspects of a trial," which it concluded likely affected her conclusion as to defendant's competence.

As the court explained:

> The [c]ourt has addressed defendant on many occasions and was able to re-focus defendant, much like Dr.

14

> Chung was able to do during her evaluations. . . . However, the [c]ourt finds that defendant would not be able to focus on jury selection, witness testimony, or even the arguments of counsel during the course of a trial, while responding to internal stimuli at the same time. A defendant must focus on all aspects of a trial to make important decisions, with the advice of counsel, including which jurors should be excused, whether or not to testify, which witnesses should be called, and whether he should testify on his own behalf.

We recognize the court found Dr. Chung to be a credible witness, but it was not obligated to accept her opinions. Indeed, a fact-finder is free to accept or reject all or part of any expert's testimony, "even if the expert was 'impressive.'" M.J.K., 369 N.J. Super. at 549 (quoting State v. Carpenter, 268 N.J. Super. 378, 383 (App. Div. 1993)). "Respecting expert opinions of psychiatrists or psychologists, the court, sitting as a factfinder, must use its 'common sense and ordinary experience.'" Ibid. (quoting In re Yaccarino, 117 N.J. 175, 196 (1989)).

Moreover, the court, sitting as the factfinder, was within its discretion to determine Dr. Chung's opinions were not persuasive even though defendant did not present opposing expert testimony. See In re Civ. Commitment of R.F., 217 N.J. 152, 174 (2014) ("A trial judge is 'not required to accept all or any part of [an] expert's opinion[].'") (alterations in original) (quoting In re D.C., 146 N.J. 31, 61 (1996)); Biunno, Weissbard & Zegas, Current N.J. Rules of

15

Evidence, cmt. 2 on N.J.R.E. 703 (2022-2023) ("Certainly, a factfinder is never bound to accept the testimony of expert witnesses, even if unrebutted by any other evidence."). The court satisfactorily explained its decision and had wide latitude in considering the expert's opinion. See Torres v. Schripps, Inc., 342 N.J. Super. 419, 430-31 (App. Div. 2001).

Although, we affirm the court's competency determination, we note its order and written opinion included language that defendant was not likely to "become competent in the future." As noted, N.J.S.A. 2C:4-6 requires the court to make specific factual findings to address under what circumstances charges against a defendant should be "dismissed with prejudice or held in abeyance." As we cannot discern from the record if the court made the necessary findings under that statute, or to what extent its conclusion that defendant was unlikely to become competent in the future impacted those required findings, we remand for the court to make the necessary factual findings and legal conclusions in accordance with N.J.S.A. 2C:4-6(c).

Affirmed in part and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2332-23