**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0003-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JUNE GORTHY, a/k/a
JUNE M. GOVERNALE,
and JUNE GORTHY
GOVERNALE,

    Defendant-Appellant.

_____

Submitted January 22, 2025 – Decided April 15, 2025

Before Judges Sumners and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 15-04-0571.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Lee March Grayson, Designated Counsel, on the brief).

Raymond S. Santiago, Monmouth County Prosecutor, attorney for respondent (Monica do Outeiro, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant June Gorthy appeals from an order denying her petition for post-conviction relief (PCR) without an evidentiary hearing. After our review of the record and applicable legal principles, we affirm.

I.

We detail the factual history from our opinion rendered on defendant's direct appeal of her conviction and sentence. See State v. Gorthy, No. A-1341-18 (App. Div. Feb. 3, 2021) (Gorthy II). In our opinion we cited the factual history from the Supreme Court's previous opinion as well as several of our prior opinions. See State v. Gorthy, 226 N.J. 516 (2016); State v. Gorthy, 437 N.J. Super. 339 (App. Div. 2014); State v. Gorthy, No. A-2678-09 (App. Div. Oct. 9, 2012) (slip op. at 3-7) (Gorthy I).

> Tried to a jury, defendant June Gorthy was convicted of fourth-degree stalking, N.J.S.A. 2C:12-10. On September 28, 2018, the trial judge sentenced defendant to [1,758] days credit for time served, and entered a permanent order restraining her from contact with the victim C.L.[1] See N.J.S.A. 2C:12-10.1.
>
> The indictment included a course of stalking from July 1, 2002, through May 31, 2006, which had been tried earlier. Defendant's prior conviction of not guilty by reason of insanity was vacated by the Supreme Court,

---

[1] We use initials to protect the identity of the victim and to preserve the confidentiality of these proceedings. R. 1:38-3(d).

2

and a new trial was ordered. Gorthy, 226 N.J. at 516. Defendant's five-year term of probation on a related charge, third-degree possession of a handgun, N.J.S.A. 2C:39-5(b), not reversed on appeal, included a no-contact provision that expired September 2014. On December 2, 2014, defendant phoned the victim. The indictments were consolidated and thus included conduct dating back to 2002, up to and including the 2014 phone call.

. . . .

Defendant met C.L. in a 1998 "personal growth" conference at the Esalen Institute in California. The event rules prohibited participants from after-hours contact with presenters and stressed that presenters were not providing individual counseling services. After that first seminar, defendant sent C.L. fruit baskets. Defendant attended the annual seminar in 1999. During that conference, defendant engaged in inappropriate conduct, which continued after. She was banned from future participation.

Defendant relocated from Colorado to New Jersey in 2002, arriving unannounced at the victim's office, and eventually being arrested while outside her door. Police located weapons in defendant's van, including the firearm she was convicted of possessing, as a result of which she was placed on probation.

Between 1998 and when defendant was placed on probation in 2009, the stalking continued unabated, including seventy-four phone calls from April 15 to May 9, 2006, and defendant's filing of a complaint with New Jersey's Board of Marriage and Family Therapists regarding C.L. The complaint was ultimately dismissed because, among other reasons, C.L. was never defendant's therapist.

3

C.L. reported the 2014 phone call, and an arrest warrant issued for defendant. Defendant explained to the officer who arrested her that she only made the call because she was training as a mental health counselor and wanted C.L. to become her mentor. When defendant's apartment was emptied by the landlord, representatives contacted police and turned over a bag of items found in the apartment. This included several knives, binoculars, duct tape, a dog leash, a sleeping bag, pliers, lighter fluid, two pairs of latex gloves, and a surgical kit. Detective Jacob Kleinknecht testified on cross-examination and redirect that the items could potentially be used as kidnapping tools.

During the trial, C.L. and various police officers testified. Defendant also testified, insisting that in 1998, she and C.L. formed a close relationship, and that in 1999, it continued as she and C.L. exchanged phone calls and correspondence. Defendant denied that she violated the rules of the Esalen seminar, stating that between 1999 and 2002 she and C.L. "had a consensual relationship" with phone calls and letters. Additionally, she denied that C.L. ever wrote asking her not to contact her again.

Defendant claimed that in 2002, she reached out to C.L. only because she "felt that [she] was being legally harmed with some misunderstandings and [] misinformation stated in the police reports." She explained that when she contacted C.L. in 2006 it was because she was going through a difficult time in her life and felt that C.L. was a person who "cared." Defendant denied that she had the internet capacity on her phone to send certain inculpatory messages she had written to C.L. She said that in 2012 she and C.L. passed each other in Trenton, coming within a couple of feet and exchanging a friendly glance, and that as a result, she called her in 2014.

4

Defendant explained each item found in her apartment as having been possessed for an innocent reason. She asserted that C.L. called her as much as she called C.L. between 1999 and 2002, and wrote to her—adding that she lost C.L.'s letters because of her moves, and that since she had a different phone at the time, she was unable to obtain the records to prove that C.L. called her. Defendant also explained that she relocated from Colorado because when she and C.L. spoke in 1998, C.L. said she did not want a long-distance relationship and knew she was moving to New Jersey. Defendant also claimed that the officer who arrested her in 2008 told her that although she was prohibited from contacting C.L., that if she encountered her on the street, she "should try to talk to her."

In other words, defendant readily acknowledged the conduct with which she was charged while testifying. However, she insisted that C.L. and she had been involved in a relationship, that C.L. had contacted her, and that therefore the conduct was not stalking.

[Gorthy II, slip op. at 1-5).]

Defendant appealed her 2018 conviction and sentence and we affirmed. Id., slip op. at 1. On May 18, 2021, the Supreme Court denied certification. State v. Gorthy, 246 N.J. 321 (2021).

Thereafter, defendant filed a timely pro se petition for PCR. An amended petition was filed following appointment of counsel. Defendant alleged ineffective assistance of counsel for failing to: adequately cross-examine key witnesses, file a motion for a speedy trial, and request limiting instructions on

A-0003-23

evidence. After oral argument, the court denied defendant's PCR petition without an evidentiary hearing.

Defendant raises the following points on appeal.

POINT I

THE PCR COURT ERRED IN DENYING []
DEFENDANT'S PETITION FOR POST-
CONVICTION RELIEF BASED ON INEFFECTIVE
ASSISTANCE OF COUNSEL WITHOUT
AFFORDING HER A FULL EVIDENTIARY
HEARING.

A. DEFENSE ATTORNEY NEGLECTED TO
OBTAIN [] DEFENDANT'S PRE-2002 PHONE
RECORDS.

B. DEFENSE ATTORNEY FAILED TO
ADEQUATELY CROSS-EXAMINE C.L. AND THE
INVESTIGATING DETECTIVE.

C. DEFENSE ATTORNEY WAS INEFFECTIVE
FOR FAILING TO MOVE TO DISMISS THE
INDICTMENT BASED ON SPEEDY TRIAL
GROUNDS.

POINT II

THE PCR COURT ERRED BY NOT CONDUCTING
A FULL EVIDENTIARY HEARING.

In support of her first argument, defendant asserts counsel neglected to obtain pre-2002 Sprint phone records that would have substantiated a consensual relationship with C.L. Defendant asserts she requested counsel to subpoena the

6

records but counsel failed to do so and given their importance in refuting C.L.'s narrative and bolstering defendant's testimony, the absence of these records severely undermined her defense.

Defendant asserts this deficient representation was a breach of counsel's duty to conduct a meaningful investigation of the case which would have corroborated her version of events . She further argues there is no justification for counsel's failure to pursue this line of investigation, rendering the decision unreasonable and unsupported by trial strategy. She contends in similar cases, particularly State v. Jones, 219 N.J. 298, 316 (2014), courts have found that the failure to obtain potentially exculpatory phone records can justify remanding for an evidentiary hearing.

Defendant asserts that her trial counsel provided ineffective assistance by failing to conduct adequate cross-examination of both C.L. and Detective Kleinknecht. She asserts while C.L.'s direct testimony spanned fifty-eight pages; the defense's cross-examination only covered ten pages. Similarly, she asserts the cross-examination of Detective Kleinknecht, the lead investigator, comprised merely fifteen pages of the transcript.

Defendant contends that her counsel failed to question C.L. about their close, mutual relationship and neglected to highlight communications

A-0003-23

suggesting the relationship was consensual rather than one-sided. With respect to Detective Kleinknecht, defendant asserts that her counsel missed opportunities to challenge the State's narrative, particularly the insinuation of a planned kidnapping—a crime with which she was never charged. Additionally, she contends counsel failed to underscore Detective Kleinknecht's belief that defendant was not violent. Given the inadequacy of these cross-examinations, defendant requests a remand for an evidentiary hearing.

Lastly, defendant argues that her trial counsel was ineffective for failing to move to dismiss the indictment on speedy trial grounds, despite a prolonged and unwarranted pretrial incarceration. Defendant notes by the time of her sentencing on September 28, 2018, she had already spent approximately four years, nine months, and twenty days in custody, significantly exceeding the maximum eighteen-month sentence for a fourth-degree offense.

Given the significant impact of the delay, including its effects on defendant's personal and professional life, defendant contends any legitimate strategic reason for failing to move for dismissal on speedy trial grounds. Moreover, she asserts the record is unclear  why counsel did not pursue this remedy, especially in light of the unusually long pretrial detention for a fourth-degree offense. Defendant requests a remand for an evidentiary hearing to

8

address this issue, as the failure to file a motion for dismissal based on the speedy trial violation constitutes ineffective assistance of counsel.

II.

Where, as here, the PCR court has not conducted an evidentiary hearing, we review its legal and factual determinations de novo. State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020). A defendant is not automatically entitled to an evidentiary hearing. State v. Porter, 216 N.J. 343, 355 (2013). Rule 3:22-10(b) provides that a defendant is entitled to an evidentiary hearing on a PCR petition only if they establish a prima facie case in support of PCR, material issues of disputed fact cannot be resolved by reference to the existing record, and an evidentiary hearing is necessary to resolve the claims for relief. Id. at 354 (quoting R. 3:22-10(b)). The PCR court should grant an evidentiary hearing "if a defendant has presented a prima facie claim in support of [PCR]." State v. Preciose, 129 N.J. 451, 462 (1992).

To establish a prima facie claim of ineffective assistance of counsel, the defendant is obligated to show (1) that counsel's performance was deficient, and (2) the deficiency prejudiced his right to a fair trial. Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 48-50 (1987). Under the first prong, defendants must demonstrate "counsel made errors so serious that

9

counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Strickland, 466 U.S. at 687. Defendants can establish deficient performance of counsel by showing "counsel's acts or omissions fell outside the wide range of professionally competent assistance considered in light of all the circumstances of the case." State v. Gaitan, 209 N.J. 339, 350 (2012) (quoting State v. Castagna, 187 N.J. 293, 314 (2006) (internal quotations and citation omitted). "Mere dissatisfaction with a 'counsel's exercise of judgment' is insufficient to warrant overturning a conviction." State v. Nash, 212 N.J. 518, 542 (2013) (quoting State v. Echols, 199 N.J. 344, 358 (2009)). The "petitioner must do more than make bald assertions," but instead "allege facts sufficient to demonstrate counsel's alleged substandard performance." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Under the second prong, defendant must show "counsel's errors were so serious as to deprive [] defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.

## III.

We conclude each of defendant's arguments on appeal were raised below and thoroughly evaluated by the PCR court. We affirm substantially for the reasons set forth in the court's cogent written decision. We add the following.

A-0003-23

We first address defendant's claim of inadequate investigation related to the phone records. "[W]hen a petitioner claims trial counsel inadequately investigated a case, [they] must assert facts that an investigation would have revealed, supported by affidavits or certifications based on the personal knowledge of the affiant or the person making the certification." Porter, 216 N.J. at 353 (quoting Cummings, 321 N.J. Super. at 170). A defendant "must do more than make bald assertions that he was denied the effective assistance of counsel." Id. at 355 (quoting Cummings, 321 N.J. Super. at 170). Rather, a defendant's claim must be supported by "specific facts and evidence." Ibid. "[A] defendant is not entitled to an evidentiary hearing if the 'allegations are too vague, conclusory, or speculative.'" Ibid. (quoting State v. Marshall, 148 N.J. 89, 158 (1997)).

We conclude the PCR court properly rejected this claim. Defendant failed to point to any competent evidence presented to the PCR court establishing that the Sprint phone records would have yielded evidence establishing her defense to the violation of the no contact order. See Cummings, 321 N.J. Super. at 170.

As noted by the State, defendant failed to provide the PCR court with the phone records, a certification or affidavit as to what the records would show to support her argument. Defendant's petition merely speculated that the records

A-0003-23

would have corroborated her version of events regarding a consensual relationship, yet this assertion was contradicted by all other evidence and testimony at trial. C.L. testified she refused to take defendant's calls and wrote defendant that she would not continue any dialogue with her. Therefore, this was a reasonable strategic choice by counsel to not obtain the records. Furthermore, we agree with the State that defendant is required to assert the facts that an investigation would have revealed through affidavits or certifications based on personal knowledge. See Porter, 216 N.J. at 353. Instead, defendant merely asserted that the records would have yielded competent evidence supporting her version of events, with no proof. See id. at 355. We conclude defendant's argument fails to satisfy the first prong of Strickland.

Additionally, we conclude defendant did not sustain her burden under Strickland's second prong concerning this issue because she failed to present any competent evidence to establish that had counsel obtained these phone records, there is a reasonable probability it would have yielded evidence to overturn her convictions. Strickland, 466 U.S. at 694.

We now turn to defendant's second argument claiming ineffective assistance of counsel based on inadequate cross-examination of witnesses. As correctly noted by the State, defendant may disagree with the strategic decisions

12

made by trial counsel, such as the manner and length of cross-examination of these witnesses, investigative efforts, and pre-trial motions, but this disagreement does not meet the constitutional threshold for establishing ineffective assistance of counsel. The scope and manner of cross-examination, including whether to cross-examine a specific witness, is a strategic choice that cannot be second-guessed unless it is shown to be prejudicial. See State v. Buonadonna, 122 N.J. 22, 37 (1991). We conclude defendant fails to point to any competent evidence presented to the PCR court establishing that a different cross-examination of C.L. and Detective Kleinknecht would have yielded evidence establishing a defense to the charge for the violation of the no contact order.

We therefore concur with the PCR court's finding when it stated:

> Defendant now maintains that trial counsel should have questioned C.L. on defendant's claim that they enjoyed a close relationship. After C.L.'s credible testimony that no such relationship existed, trial counsel's decision to avoid such an inquiry was sound trial strategy which is "virtually unchallengeable," Strickland, 466 U.S. at 690.

Defendant's cross-examination contention has failed to establish the first prong under Strickland.

A-0003-23

In addition, defendant has also failed to sustain her burden under Strickland's prejudice prong because she failed to present any competent evidence establishing that a different cross-examination would have been sufficient to overturn her conviction. Strickland, 466 U.S. at 694.

We next address defendant's final point on appeal related to counsel's failure to move for dismissal based on speedy trial principles. "The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and imposed on the states by the Due Process Clause of the Fourteenth Amendment." State v. Tsetsekas, 411 N.J. Super. 1, 8 (App. Div. 2009) (citing Klopfer v. North Carolina, 386 U.S. 213, 222-23 (1967)). "The constitutional right . . . attaches upon defendant's arrest." Ibid. (alteration in original) (quoting State v. Fulford, 349 N.J. Super. 183, 190 (App. Div. 2002)). Since it is the State's duty to promptly bring a case to trial, "[a]s a matter of fundamental fairness," the State must avoid "excessive delay in completing a prosecution[,]" or risk violating "defendant's constitutional right to a speedy trial." Ibid.

The determination of whether a defendant's right to a speedy trial has been violated is based upon the four-factor balancing analysis pronounced in Barker v. Wingo, 407 U.S. 514, 530 (1972). See State v. Cahill, 213 N.J. 253, 258

14

(2013) (maintaining that <u>Barker</u> is "the governing standard to evaluate claims of a denial of the federal and state constitutional right to a speedy trial in all criminal and quasi-criminal matters").  The four non-exclusive factors that a court should evaluate are: (1) length of the delay, (2) reason for the delay, (3) assertion of the right by defendant, and (4) prejudice to defendant.  <u>Id.</u> at 264 (citing <u>Barker</u>, 407 U.S. at 530).  No one factor is determinative of whether a right to a speedy trial has been violated.  <u>Id.</u> at 267 (citing <u>Barker</u>, 407 U.S. at 533).  We will not overturn a trial judge's decision where a defendant was deprived of due process on speedy trial grounds unless the judge's ruling was clearly erroneous.  <u>State v. Merlino</u>, 153 N.J. Super. 12, 17 (App. Div. 1977).

Concerning this point, the PCR court found:

> Defendant merely totals the numbers of days spent incarcerated before trial and suggests that, standing alone, is a violation of her speedy trial rights that trial counsel failed to assert.  [But,] [her] petition is devoid of any <u>Barker</u> analysis and does not even suggest let alone establish that a speedy trial motion would have been successful.

Without an appropriate analysis of the <u>Barker</u> factors, defendant's argument fails to satisfy either prong of <u>Stickland</u> as found by the PCR court.

Finally, because no genuine factual issues were presented by defendant in her PCR petition that were not capable of being decided on the existing record,

15

the PCR court's decision not to hold a hearing was appropriate. See R. 3:22-10(b) (stating a defendant is only entitled to an evidentiary hearing "upon the establishment of a prima facie case in support of [PCR], a determination by the court that there are material issues of disputed fact . . . , and a determination that an evidentiary hearing is necessary to resolve the claims for relief").

To the extent we have not specifically addressed any of defendant's remaining legal arguments we conclude they are of insufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

16

A-0003-23